## Samuel C. Dodge *v.* Wesley G. Evans et al.

1. Vendor's Lien for the Price of Land.—D. having sold and conveyed land to E. on a credit, E. is declared a trustee for the benefit of D's implied equitable lien on the land, as a security for the payment of the price.

2. Same—Practice in Chancery.—It is not necessary in a bill to enforce a vendor's lien to aver that the complainant did not take security for his debt. To do this would be to anticipate the defense. It is always good pleading to make a good *prima facie* case, and leave matters of defense to come from the other side.

3. Same.—Under the prayer for general relief a court of equity will extend to the complainant such redress as shall be agreeable to the case made out by the bill, whether specifically mentioned in the bill or not.

4. Waiver of Vendor's Lien.—It is a waiver of a vendor's lien for him to take other personal or collateral security; but where this nor any other affirmative act has been done by which the waiver is to be inferred, the lien will be implied and enforced, and the burden of proving such waiver is on the vendee.

5. Liability of Sub-Vendee.—If a subsequent purchaser of the land have notice of the facts, the land will still be liable in his hands.

Error to the chancery court of Harrison county. HANCOCK, J.

Appellant assigned the following error :

The court erred in sustaining the demurrer of the defendants to the complainant's bill.

*F. Anderson,* for appellant.

It appears from the bill of complaint that appellant sold to Wesley G. Evans, one of the appellees, the tract of land mentioned in the pleadings, and made a deed of conveyance thereof on the 25th of January, 1860, which was filed as Exhibit A. The sale was made for $900 in three equal payments, to be made respectively on the 1st of May, 1860, on the 1st of January, 1861, and on the 1st of January, 1862 ; and notes were executed for the three several payments. Two of these remain unpaid, and were filed as Exhibits B and C.

On the 31st of January, 1861, Wesley G. Evans sold and conveyed said tract of land to the other appellee, C. G. Adams. This deed is also filed as Exhibit D. The prayer of the bill was for an account, and that the land be held subject to its payments, and that the equity of redemption of the defendants be foreclosed, and for other and further relief. To this bill a general demurrer was filed, and a decree rendered thereon, dismissing the bill.

No lien or equitable mortgage was retained in the deed to Evans. There can be no doubt on the facts that an equitable lien arose by confliction, that is to say, a vendor's lien on the land conveyed to Evans, against him and all claiming under him, with notice of the non-payment of the purchase money. The point is made, however, that if the bill was intended to set up the vendor's lien, it was materially defective in omitting one fact or averment essential to its existence, to-wit: That the vendee gave no security for the payment of the purchase money. And it was insisted that the vendor's lien is founded on the presumption that he relied on the security of the land, and arose only where no security is taken but the

vendee's simple promise or liability, and that the basis of this presumption must *be stated to exist ;* and its omission is fatal to the bill. See the language of Judge Story in the 2d vol. of Equity Jurisprudence, from section 1224, et seq. Also Parsons on Contracts, p. 277 ; 2 Wash. on Real Prop., 86 ; 3 Parsons on Contracts, 278 ; 2 Wash., 88. The same principle is laid down in Cross on Liens, 89, 90, and the other cases cited on which it is based.

But the counsel further insisted that his proposition is not met by the rule that it is a negative, and need not be averred ; and in support of this idea, says : " The averment that the notes have not been paid, is a negative averment, and the possession of the notes certainly creates a stronger presumption of non-payment, than is created by the non-existence of other security, by the exhibition of the notes signed by the vendee, alone ; and yet, the bill would be defective if it failed to state that the notes were unpaid. The non-payment of the notes, gives the right to sue, and must be averred. The absence of all security, gives the lien, and for a like reason should be distinctly stated. The definition of the vendor's lien, the terms in which it is stated, make the absence of any other security the foundation of the vendor's equity. The lien only exists under certain circumstances." And he cites 4 Kent to sustain this. But on examination of this authority, it will be seen that it is directly in opposition to the views of counsel, and is, *in part,* a conclusive authority in favor of my position.

Again : " This equitable mortgage will bind the vendee and his heirs, and all other purchasers from the vendee with notice of the existence of the vendor's equity.

*Prima facie,* the lien exists without any special agreement for the purpose, and it remains with the purchaser to show that, from the circumstances of the case, it results that the lien was not intended to be reserved, as *by the taking other real or personal security,* or whether the object of the sale was not money, but some collateral benefit.

I ask, could any authority be more conclusive in favor of

my views of the subject. Macbeth v. Symmons. See, also, 15 Vesey's Rep.

I now refer to the cases decided in this court, on the subject: Richardson v. Bowman, 40 Miss., 782–784, quoting from Sugden on Vendors.

This is almost the language of Kent, and it is seen that nothing is said here of anything being the foundation of the lien, except the sale and non-payment of the purchase money; leaving it to the purchaser to show a waiver, if there be one. Stewart v. Jones, 1 S & M., 199–200; Clower v. Rawlings, 9 S. & M., 127. This was a bill to enforce the vendor's lien, and there was no averment in the bill that security was not taken. The court held that the lien was a parcel of the contract itself, and constituted the vendor's privilege and security, and subsists against the vendee and his heirs, and all who take under him with notice. The court states in the same connection, that the lien may be waived or relinquished, but what amounts to this is involved in difficulty. I think it is plain that in this case, the court was acting on the idea that the lien arose at once on the contract, and as a part of it; otherwise it could not be waived or relinquished. Glasscock, et al., v. Robertson, 13 S. & M., 85. This seems to be a case where a bill was brought to enforce the vendor's lien, and a decree made enforcing it, and affirmed. There seems to have been no allegation in the bill, that security was not taken, but the case was put at issue, and it offered in proof, that no security was taken.

The only question that remains in the case is, whether the bill and exhibits show such a state of facts as might have authorized the court to enforce the vendor's lien, and whether a decree to that effect would have been consistent with the case made by the bill and exhibits, there being a prayer for other and general relief. I understand it to be settled in such cases, that a decree may be granted. Wilson v. Wilkins, 2 Johnson's Ch. Rep., 117. In this case Chancellor Kent says: "Where the bill contains a prayer for general relief, and also, for specific relief, the plaintiffs may have other

specific relief, provided it is consistent with the case made by the bill." Grimes v. French, 2 Atkyns Rep., 141; Dormer v. French, 3 Atkyns, 14; In 1 How. Miss., Ch., Justice Sharkey states the following as the rule: " Because the plaintiff may have mistaken the true state of his case, it is no reason that he should be deprived of a remedy, to which he has shown himself entitled. It is a rule which seems to be well settled by high authority, and it is certainly founded in justice, that although a party may mistake the particular relief to which he is entitled, yet if he show a clear case for the interposition of a court of equity, he will be relieved under the general prayer. English v. Foxall, 2 Peters, 595; Story's Eq. Pleading, § 40.

*D. Shelton,* on same side.

Mr. Anderson's petition for a re-argument is a very thorough argument of this case. In connection with it, I submit the following points :

*Prima facie,* the lien exists if the purchase money is not paid, and it is for the vendee to show that the lien has been waived by the vendor. 3 Parson's on Contracts, 277. There must be a waiver of the lien, or it still exists. 2 Wash. on Real Prop., p. 90. § 16. It can be waived only by express agreement, or by a constructive waiver, such as taking collateral or other security. Wash. on Real Prop., 90. On the constructive waiver, where other security is taken, *it is only prima facie* a waiver of the lien which the vendor may counteract by proof of facts, on which such security ought not to have that effect. 3 Parsons on Con., 277; 2 Wash. on Real Prop., 90. If the lien exists between vendor and vendee, it also exists against a purchaser from the vendee, unless he be a purchaser for a valuable consideration without notice. 3 Parsons on Con., 277; Wash. on Real Prop., 88.

The defense of a purchaser for a valuable consideration without notice, cannot be raised by demurrer, but must be specially set up by plea or answer, averring explicitly and on oath, the purchase and payment before notice. A purchaser

is bound to take notice of all liens shown to exist by his vendor's title deed; any notice will be sufficient, which ought to put the purchaser, as a reasonable man, on inquiry; thus if it is recited in the deed that part of the price is not paid, it is notice to the extent of the sum so recited. 2 Wash. Real Prop., 88–9. Under the facts of this case a reasonably cautious man would have ascertained before his purchase, whether these notes had been paid or not.

*Harris & Withers*, for appellees.

This bill is based upon the somewhat prevalent idea, that if notes for the purchase money of land, contain a reference to the consideration, an express equitable mortgage is created. It is not based upon the vendor's equitable lien. If it were, it is defective in not containing the essential averment, that the vendee gave no other security on which the vendor could rely; and this position is not met by the rule that it is a negative, and need not be averred, for the non-payment of the notes sued on must be averred, although that is a negative. The absence of any other security is a condition of the existence of the vendor's lien. 3 Kent, 165. The bill cannot be sustained to enforce a vendor's lien, because consistently with the fact that the vendor's notes remain unpaid, the lien may not exist. This bill does not rely on the lien created by law, where no security exists, because it avers that an express agreement, of which the notes are exhibited as evidence, and in which it is unnecessary to aver that no security was taken.

The two things are essentially different. The equitable mortgage here claimed is the offspring of contract; while the vendor's lien arises by operation of law. The assignment of the notes, carries with them the equitable mortgage; while the vendor's lien exists only between the original parties, and does not pass by the assignment of the notes.

The equitable mortgage may not only exist, independently of the fact that no security was taken, but may be created on personal, as well as real estate. In this case it is called a "mortgage," and not a "vendor's lien," and asks

that the equity of redemption be foreclosed. Instead of the usual and necessary words, "for which the vendor gave his promissory notes without security," or "that the complainant relying on the land as security, took no other," the bill states, that "it was agreed at the time that said land and improvements thereon should stand and remain a lien and mortgage to secure," etc., "as will more fully appear by reference to said deed and notes," etc., and then instead of stating that the sub-vendee "had notice of the non-payment of the purchase money," the bill states that he had special notice of the "existence of said mortgage lien." The exhibits, themselves, qualify what is said of them in the bill, and the pleader adopted their legal effect, which is a mere mortgage, and not a vendor's lien.

There is no mortgage, legal or equitable, and no vendor's lien, unless the fact exists that no security was taken. And this fact will not be presumed, and this lien enforced, where, as in this case, it is not averred. If this averment may be dispensed with, then may any other averment or element which make up the equity of the bill. The absence of this averment renders the bill amenable to a general demurrer, because the facts out of which the right to relief springs, do not appear on the face of the bill. The mortgage lien is reserved on "improvements" which may or may not be fixtures.

SIMRALL, J.:

Samuel C. Dodge exhibited his bill in chancery against Evans and Adams, asserting a lien on land, against Adams, as the sub-vendee of Evans. The defendants demurred, which was sustained, and the bill was dismissed; and this is assigned for error. The important question raised in the record is, whether under the allegations of the bill the complainant is entitled to any relief.

In framing the bill, the pleader most probably supposed that because the promissory notes for the several installments of the purchase money, referred to the land and the deed, that thereby was raised or created an equitable mortgage or

express lien. The averments of the bill are made on this theory of the complainant's case, rather than on the idea of a vendor's lien. In addition to the specific relief, the bill closes with the general prayer in these terms: "And for all such other and further relief, as, to your honor may appear proper and equitable under this bill."

In Grimes v. French, 2 Atk., 141, though a general relief be prayed in the bill, "at the bar you may pray a particular relief that is agreeable to the case made by the bill." As where the bill is brought for an annuity charged on land, it is not permissible to drop the demand for the annuity and insist on the land out of which the annuity issues, for that is another and different case.

In Wilkin v. Wilkin, 1 Johns. Ch. Rep., 116, the bill was brought not for partition strictly, but to carry into effect a partition formerly made between the parties. There was a failure of proof on the point of partition with partie:. It was then claimed for the complainant that the court should go on and make partition. The general rule was stated by the chancellor to be, "that other specific relief may be afforded, provided it be consistent with the case made by the bill." In this instance there is no objection to the application of the rule on the ground of surprise or prejudice. Although relief was refused on other grounds (the denial of complainant's title to the land), it was conceded that it was in the scope of the bill to decree a partition by the court.

Justice Story, in Eq. Plea., § 40, says: "If the plaintiff should mistake the relief to which he is entitled in his special prayer, the court may yet afford him the relief to which he has a right under the general prayer for relief, provided it is such relief as is agreeable to the case made by the bill." It is said also, that the general prayer will be sufficient, without indicating special relief, and that on the hearing at the bar, the relief warranted by the case stated will be awarded. Story Eq. Plea., § 41. To this, however, there are many exceptions, such as for "injunction, *ne exeat*," etc.

The demurrer to the bill, it is urged, ought to have been

sustained, because from all that is averred *non constat*, but that security was taken for the money, upon which the creditor relied, and which would amount to a waiver of the lien. By the fact of the sale of real estate, whether the title be made or retained, there results a lien on the land for the amount of the purchase money, not only against the vendee and his heirs and privies, but against subsequent purchasers also, who have notice that the purchase money is unpaid. 2 Story Eq. Jurisprudence, § 1217; Chapman v. Brown, 6 Johns., 402. The vendee, and those claiming under him, become trustees for the vendor, if the sub-purchaser had notice. The rule was derived from the Roman law, which fastened a " privilege " in favor of the vendor upon the sale of a thing, whether moveable or immoveable, until the price was paid; which followed it into whosesoever hands it might go, burdened with this right to subject it to sale for its original price, whether the transferee had notice or not. This lien reserved by the civil law, ceased when the price was actually paid, or where anything was taken in satisfaction of the price, although payment had not actually been made. The giving of a pledge or security was deemed equivalent to payment. 2 Story Eq., § 1226. We have the same principle in our jurisprudence applied to real estate, but much modified. The lien results from the sale of land by implication of law. There need not be an agreement or *conventio mentium* on the point. It would follow, then, that if the vendee, or those deriving title from him, claim exemption from the lien, it devolves on them to show that it never existed or that it has been extinguished.

The statement of the bill is that Samuel C. Dodge sold and conveyed to Wesley G. Evans the land in dispute, and that Evans executed and delivered his three several promissory notes, payable respectively at one, two and three years to Dodge—that two of the notes are unpaid. The deed and notes are exhibited with the bill. From this transaction, the lien was implied, and Evans held as trustee for the benefit of Dodge's equity. There is also the allegation of

an agreement that the land and the improvements thereon should stand subject to, and remain a lien and mortgage for the purchase money, as will appear by reference to the exhibits, the deed and notes. The deed contains a description of the notes. as representing the price to be paid for the land. The notes identify themselves with the deed and the land. And it is true as a proposition of law, that both parties did agree that a lien existed, or was deduced from these papers, whether there was such express agreement or not. For it does not appear from them that the vendor waived, abandoned, or in any wise extinguished it.

We do not agree with the counsel for the demurrant that it was necessary to have stated in the bill that the vendor, Do lge, did not take security for his debt. It is always good pleading to make a *prima facie* case. Matters of avoidance, or satisfaction of the plaintiffs right, come more properly from the other side. Judge Story says the burden of proof is on the vendee to show that the lien has been displaced or waived by consent of parties. 2 Story Eq. Juris., § 1224. In Garson v. Green, 1 Johns. Ch. Rep., 309, Chancellor Kent held, " that *prima facie* the lien exists on the land, and it lies on the purchaser to show that the vendor agreed to rest on other security." If this be so, surely the complainant cannot be put to aver in his bill, a fact, the *onus probandi* of which is on the defendant.

In Stewart v. Ives, 1 S. & M., 197, it is said the lien continues so long as the land remains in the hands of the original purchaser, unless waived by some act of the party.

The rule is very ancient, that if a party has carried out his own security, the law will not create another in aid. Bond v. Kent, 2 Verm. Rep., 281. Hence, has come the doctrine, that if the vendor takes collateral personal security, as a bond or note with a security or indorser, or a mortgage or pledge, etc., he has elected his security, and will be taken to waive that which the law would imply. Gilman v. Brown, 1 Mason Rep., 212; Clower v. Rawlings, 9 S. & M., 128.

There must be some affirmative act done by the vendor, to

waive the lien. *Ex-parte* Gyde, 1 Glyn & Jamison, 325. Bond taken and receipt given for the purchase money, will not discharge the lien, if the money is not paid. Saunders v. Lisley, 2 Ball & Bea. 514. Nor will the fact that that vendor has taken bills for the amount of the purchase money. Bills of exchange are not, in such cases, *prima facie,* to be considered as a substitute for the lien, but merely as a mode of payment. And it will rest on the purchaser to show that the vendor consented to rest on the collateral security alone. Grant v. Mills, 2 V. & B., 309.

The case stated in the bill is, that the land was sold and conveyed on a credit, and the notes of the vendee taken. The transaction is set out by averment, and the papers exhibited; the whole of it purports to be disclosed, and on its face negatives the idea that any part of it is omitted. Adams purchased the land from Evans, and took a deed; the allegation is, that he had special notice of the existence of said "mortgage lien." It is an erroneous deduction of law, in the pleader to denominate the " equity " of complainant "a mortgage lien." We take the statement to mean that Adams had notice that two instalments of the purchase money from Evans were unpaid. The deed to his vendor recited, that the sale was on credit, and that Evans had made promissory notes therefor. If he had "special" notice of the "lien" in favor of Dodge, he necessarily must have had knowledge that all of the purchase money had not been paid.

The primary object of the bill in the case cited from 1 Johns. Ch. Rep., was to procure the specific execution of a partition of land made *in pais,* if, under such a bill, failing to establish the conventional partition, the court could go on, and divide the land. In this case where the object of the bill is to enforce a lien on the land for the purchase money, it is indulging in no larger latitude to hold, that where it appears from all the statements of the bill, that the equity is the vendor's lien, and not an express or mortgage lien, under the prayer for general relief the court should extend to the complainant such redress as is agreeable to the case made by

the bill. Nor thereby would the defendants be surprised or prejudiced. By answer they can make full defense, that the lien has been waived by taking and resting upon other security, or otherwise. Wherefore we reverse the decree of the chancellor, render judgment here overruling the demurrer, and remand the cause for further proceedings, allowing the defendants sixty days from this date to plead or answer.