NICHOLAS BAKER et al. *v.* H. M. GRIFFIN.

1. CHANCERY COURT — PRACTICE — VENDOR AND VENDEE. — In December, 1868, G. sold and conveyed to H. two tracts of land, by deed, absolute on its face; H. paid cash, $400, and gave his notes for $800. In 1869 H. sold and conveyed one of these tracts of land to L., by deed absolute on its face. Payment to H. was secured only by the notes of L. who had notice that H. was still indebted to G. for this land. In March, 1870, H. and wife, with the consent and approval of L. executed a trust deed on *both* these tracts of land, to secure to G. the purchase money due him from H. L. agreed to join in this deed, but did not. Afterwards L. sold and conveyed the one tract to B. The latter did not make a search in the clerk's office for conveyances or incumbrances and had no notice in fact of the trust deed. Was B. a *bonâ fide* purchaser from L? *Held*, that he was.

2. SAME — CANCELLATION OF DEEDS. — On a bill filed by G. against H. L. & B. to cancel all the conveyances, it appearing that H. was still indebted to G. and L. to H. and B. to L., though the particular relief sought was refused as to B. G. was allowed to retain his bill with a view to retain to himself the balance of purchase money due from B. to L. Dodge v. Evans, 43 Miss., 570.

APPEAL from the Chancery Court of Choctaw County. Hon. D. P. COFFEY, Chancellor.

The bill of Hardy M. Griffin, complainant below, shows:

That, in the latter part of 1868, he sold and conveyed the following lands to J. W. Hill, to wit.: North half of southwest quarter of section three, township nineteen, range eleven east, together with other lands, for $1,200, the receipt of which sum is acknowledged in the deed of conveyance, but only $400 was paid.   Said deed of conveyance was never recorded.   In February, 1869, said Hill sold said north half of southwest quarter, section three, township nineteen, range eleven east, and conveyed the same to H. M. Logue, defendant below, for the sum of $400, the receipt of which sum is acknowledged in the deed of conveyance ; but a small portion of the purchase money was not paid until some time after March 13, 1870, said J. W. Hill conveyed all of said lands bought by him from said Griffin, as aforesaid, by deed of trust, to Samuel Deloach, as trustee, for the benefit of said Griffin, and to secure to him the purchase money on said lands.   And in this deed of trust, the said Hill conveyed said north half of southwest quarter, section 3, township nineteen, range eleven east, which he had conveyed to said Logue, more than a year before that time, and which had never been reconveyed to said Hill.  Said Logue sold and conveyed said land, last above mentioned, to Nicholas Baker defendant below, for $600, but there is a clerical error in the statement of the numbers in the deed from Logue to Baker.

After the sale and conveyance of said land to Baker, said trustee sold the same under said deed of trust, and said Griffin bought it.

Said bill alleges title in the said lands, both by virtue of a vendor's lien for purchase money and through said deed in trust to secure said purchase money.

And proofs for a cancellation of the titles of Baker and Logue, defendants below, as clouds upon the title of said Griffin.

To this bill defendants below demurred, but their demurrer was overruled, and complainant below by leave of court, filed his amended bill, stating about the same material facts.

Upon final hearing the chancellor made a decree cancelling the

titles of said Baker and Logue, and declaring them null and void.

From which decree defendants below appeal.

The following are the assignments of error:

1. The chancellor erred in overruling the demurrer of defendants below.

2. The chancellor erred in cancelling the title of Nicholas Baker.

3. The chancellor erred in decreeing the cancellation of the title of H. M. Logue from J. W. Hill, and in decreeing the subsequent title of Hardy M. Griffin for the amount to the same.

*Frank A. Oritz,* for appellants.

*Dennis & Pilcher,* for appellees.

TARBELL, J., delivered the opinion of the court.

In December, 1868, H. M. Griffin sold and conveyed several tracts of land to J. W. Hill in consideration of $1,200, of which Hill paid cash $400, and gave his notes for $800. The deed contained covenants of warranty, and was absolute on its face.

Hill sold and conveyed to H. M. Logue, in February, 1869, a part of said lands for the sum of $400, secured by the notes of Logue. This deed contained covenants of warranty and was absolute on its face. Logue made this purchase and accepted the conveyance with full knowledge that, except the payment of $400, the purchase money due from Hill to Griffin remained unpaid.

On the 15th day of March, 1870, Hill and wife executed a deed of trust to Samuel Deloach, trustee, upon all the lands conveyed by Griffin to Hill (including the portion conveyed by Hill to Logue), to secure to Griffin the unpaid purchase money due thereon, which deed contained the usual conditions of sale in default of payment. This deed of trust was executed with the full knowledge, consent and approbation of Logue, who agreed to sign the deed with Hill, but failed to do so. This deed was duly recorded.

Logue, on the 14th day of September, 1870, sold and conveyed the part of said lands, conveyed to him by Hill, to Nicholas Baker, for $600, of which Baker paid about one half in cash, and received a deed with covenants of warranty. At the date of this transaction, Baker had no actual knowledge of the trust deed, though it was recorded at length in the proper clerk's office. He heard of the deed soon after his purchase, and refuses to make any further payments until the determination of this proceeding.

On the 25th day of January, 1871, Samuel Deloach, the trustee, proceeded to sell the lands conveyed to him by Hill and wife, according to the conditions of the deed and the requirements of law. Upon the sale, Griffin, the *cestui que trust*, being the best and highest bidder, became the purchaser of the lands, and received a deed from the trustee, which was duly recorded.

Upon this state of facts, Griffin filed his bill in the chancery court of Choctaw county, praying the cancellation of the deeds from Hill to Logue and from Logue to Baker, and for such other and general relief as he might be entitled to on the facts.

The chancellor sustained the prayer of the bill, and decreed the deeds named to be canceled.

Thereupon, Logue and Baker appealed to this court. It is assigned for error, that the court erred in overruling the demurrer of the defendants to the original bill; in decreeing the titles of Logue and Baker to be canceled; and in holding the title of Griffin to be paramount.

There was a demurrer to the original bill, which was overruled, when the complainant filed an amended bill, to which the defendants answered fully. A thorough examination of all the parties and witnesses followed, resulting in the development of the facts above stated.

It will be observed that Griffin conveyed to Hill two tracts of land, by deed absolute on its face. Payment was secured only by the notes of Hill. One of these tracts Hill conveyed to Logue, by deed, also absolute on its face. Payment to Hill was secured

11

by the notes of Logue, who had full knowledge that Hill was still indebted to Griffin for this land. After the conveyance of one tract to Logue, Hill, with the consent and approbation of Logue, executed to Griffin a deed of trust, in which he included the tract he had conveyed to Logue, to secure to Griffin, the original vendor, the purchase money due him from Hill. All these deeds were duly recorded.

After the deed of trust, Logue sold and conveyed to Baker, with assurances that he had the legal, unincumbered title, and good right to convey. Baker did not examine the records in the clerk's office, and had no actual notice of the trust deed. Was Baker a *bona fide* purchaser, and is he entitled to the protection of the courts?

Curtis v. Blair, 26 Miss., 309, is cited to show that the parol authority of Logue to Hill to execute the deed of trust was legal and binding. The argument is, that the statute of frauds is satisfied if the contract for the conveyance of the land be in writing and signed by the agent authorized to act therein, but that the statute does not require that the appointment of the agent to make the "note or memorandum in writing," should be in writing, nor that the signature should be in the name of the principal. (9 Leigh., 387; 6 Ad. & El., 486; 33 Eng. C. L. R., 122; Story on Agency, § 270.)

It must be conceded, without discussion, that Logue was without defense. As to him, Griffin's claim was paramount in whichever mode it might be presented, whether the latter relied solely upon his rights as an unpaid vendor, of which Logue had full knowledge, or upon the trust deed, in the rather circuitous and unusual mode adopted, tending rather to complicate, than to simplify the enforcement of his equity.

As to Baker, however, he stands in an attitude quite different from that of Logue.

Suppose Baker to have sought the records of the county clerk's office, he would have found an absolute, unconditional conveyance

from Griffin to Hill, and the like from Hill to Logue. Looking for incumbrances, he would have found none by Hill, while the title stood in his name; nor by Logue, while the title was in him. Beyond this he was not bound to search. He would, then, have found a connected title from Griffin to himself, without any incumbrances by any of these parties while holding the legal title.

The rule upon this state of facts is understood to be, that the purchaser of the legal title is not bound to take notice of a registered lien or incumbrance of an estate, created by any person other than those through whom he is compelled to deraign his title. Harper v. Bibb & Hopkins, 34 Miss., 472.

This just and sensible rule is very fully and at length discussed and illustrated, in Basset v. Nosworthy, 2 Leading Cas. in Eq., note, pp. 67–127.

The view sought to be presented may be further enforced by another theoretical case, though one not unfrequently occurring in practice. Suppose Griffin to have conveyed the lands in question at one date, by a deed absolute on its face, to A., and, at a later date, by another deed, also absolute, to B., both of which deeds were duly recorded. Can there be any doubt that a third party might take title from A. without hesitation, and in defiance of the conveyance to B. ?

In this connection, Curtis v. Blair, to which reference has been made, may be more fully stated. Curtis was the owner of lands. Pinson was his agent. Blair for himself, and Crawford & Ayres jointly, were negotiating with Pinson for these lands, belonging to Curtis. Terms were agreed on between Pinson and Blair, but when Blair tendered performance Pinson declined. Subsequently, Pinson sold the lands to Crawford and Ayres. Blair thereupon filed a bill for specific performance and to cancel the sale to Crawford & Ayres. Upon this branch of that case, the court say (26 Miss., p. 327), " With much greater reason is he not entitled to have the sale to Crawford and Ayres vacated. They purchased the land from Pinson, after the failure of Blair to perfect the sale.

They had previously been informed of Blair's negotiation for the land by Pinson, and evinced anything else but a disposition to interfere with it. They were, however, afterwards informed by Pinson that Blair had failed to complete the purchase, and acting in faith of that assurance, they became the purchasers. If it be said that they had notice from Pinson of Blair's negotition or purchase, or sufficient to put them on inquiry, and ought by reason of that information, to have satisfied themselves that Blair had no right to the land, they also had notice from the same source that Blair's purchase had failed. They were as well justified in acting on the latter information as in the former; and under the circumstances, they were not required to seek for the information than that last derived from Pinson. It would not, therefore, be equitable to cancel the purchase which they have *bona fide* made; and a due regard for their equities would incline us to assist Blair to his remedy at law, if he has any, for the alleged breach of contract on the part of Curtis, rather than to compel a specific performance against Curtis, and deprive Crawford and Ayers of the benefit of their purchase."

Upon a vital branch of the case at bar, therefore, the doctrine of Curtis v. Blair, in its application to the rights of Baker, holding him to be a *bona fide* purchaser, is fatal to the claim of Griffin to a cancellation of the deed from Logue to Baker. The latter can certainly complain that the decree of the chancellor to him was unjust and erroneous.

The decree will be reversed but the bill may be retained to enable Griffin to proceed with a view to secure to himself, if he shall be so advised, the benefit of the balance of purchase money due from Baker to Logue. Dodge v. Evans, 43 Miss., 570.

Decree reversed and cause remanded.