J. G. BARDSLEY, Appellant, v. GERMAN-AMERICAN BANK
*ctl al.,* Appellees.

**Mortgage Loan by Bank:** ACKNOWLEDGMENT BY CASHIER: *Part of Pro-
ceeds applied on debt due cashier.* Where the cashier of a
bank took the acknowledgment to a mortgage made by his
debtor to the bank, the fact that part of the proceeds went to
pay off the cashier's debt did not give him such an interest
therein as to invalidate his certificate of acknowledgment, since
the bank had the sole interest in the loan.

*Appeal from Council Bluffs Superior Court.*—HON. E. E.
AYLESWORTH, Judge.

THURSDAY, JANUARY 31, 1901.

SUIT in equity to cancel and set aside a mortgage. De-
fendants filed an answer and a cross petition asking the fore-
closure of the mortgage. There was a trial to the court, re-
sulting in a decree dismissing plaintiff's petition and fore-
closing the mortgage. Plaintiff appeals.—*Affirmed.*

*John P. Organ, H. L. Robertson* and *W. H. Killpack*
for appellant.

*Harl & McCabe* and *Stone & Tinley* for appellees.

DEEMER, J.—May 30, 1898, Henry Bruhn and wife
executed the mortgage in controversy to the defendant bank.
It was acknowledged before one James A. Hunter, who, it
is claimed, was interested in the mortgage. Bruhn conveyed
the land to plaintiff, subject to another mortgage, and it is
contended that plaintiff had no notice, either actual or con-
structive, of the mortgage executed to the bank. The case
turns on the validity of the acknowledgement of the Bruhn
mortgage. Plaintiff contends that the bank was, at the time

of the execution of the instrument, a co-partnership, composed of C. R. Hannan and James Hunter; that Hunter, in addition to being a partner, was cashier of the bank; that at the time he took the mortgage he was in fact the owner of the land; and that, in any event, he had direct interest in the bank mortgage to the extent of $300. Each and all of these matters, except that Hunter was cashier of the bank, are denied by the defendants. The law relating to the subject is well settled and generally understood. One having an interest, direct or contingent, in a conveyance or its subject matter, cannot take and certify an acknowledgement thereof, and the record of an instrument so acknowledged does not impart notice to third persons of the mortgagee's interest thereunder. As between the parties, however, the mortgage is valid and enforceable. *Wilson v. Traer,* 20 Iowa, 231; *Smith v. Clark,* 100 Iowa, 605; *Bank v. Radtke,* 87 Iowa, 365. The mere fact that one is an officer of a corporation or an agent of a co-partnership does not disqualify him from taking the acknowledgement of an instrument made to his principal. It is only when he has an interest in the subject-matter of the contract or the contract itself that he is disqualified. This interest need not appear on the face of the instrument; for a *cestui qui* trust, although not named or disclosed in the instrument itself, cannot take the acknowledgement thereof.

Let us now look to the facts disclosed by the record, aided by an examination of a transcript that has come to us under the rule. While Hunter at one time had an interest in the profits of a co-partnership doing business under the name of the "German-American Bank," yet it clearly appears that at the time the mortgage in controversy was executed he had no such interest. At that time he had the title of cashier, and was receiving a fixed salary, hat in no wise depended on the profits of the business. He was nothing more than an employe, and as such was not inhibited from taking acknowledgments of instruments running

to the bank. Was he directly or indirectly interested in the loan? It appears that a man by the name of Dunn owned the land prior to May, 30, 1898. It was then incumbered by mortgage in the sum of $1,400. Hunter agreed to buy the land for the sum of $2,100, and drew a draft on the German-American Bank for $700, with which to make the cash payment; he having agreed to assume the $1,400 mortgage as part consideration for the land. The name of the grantee was either left blank or the deed was apparently executed to Bruhn, the evidence leaving this matter in considerable doubt. But, however this may be, Hunter on the same day, immediately resold the land to Bruhn, who agreed to pay therefor the sum of $2,400. As he (Bruhn) had no money with which to make the payment, and was already indebted to the German-American Bank in a small sum,—the bank holding a note for $800 as collateral security for this loan,—Hunter proposed that he execute notes for $1,038 to cover the purchase price of the lands and the small indebtedness mentioned to the German-American Bank, and to secure the same by mortgage on the real estate, and deposit the $800 collateral note. This was acceded to and the notes and mortgage in controversy were executed and delivered to Hunter as cashier of the bank, he (Hunter) taking the acknowledgement thereof. When the notes were delivered to the bank, Hunter satisfied the draft that had previously drawn for the $700, and gave himself credit for the $300 made in the transaction. This profit he has since withdrawn. He says, and there is nothing to dispute it, that the land deal was entirely outside of the business of the bank, that his employer had no knowledge thereof, and that he loaned the money represented by the notes to Bruhn as an agent of the bank, to enable him (Bruhn) to pay for the land. Do these facts disclose such an interest in the notes and mortgage as renders Hunter incompetent to take the acknowledgment? If, as an agent of the bank, he simply loaned Bruhn $1,038,

and took a mortgage to secure the same, he would not be incompetent to take the acknowledgment. Does the fact that he was ultimately to obtain the money represented thereby to extinguish a draft theretofore drawn by him, and as profits in the transaction, change the rule? We think not. While he was no doubt interested in receiving enough money from Bruhn to make up the agreed purchase price, it made no difference to him where the money was obtained with which to meet that agreement. He had no interest in the mortgage except that it was the means whereby Bruhn was to get his money with which to pay him for the land. Had Bruhn executed the mortgage to some other bank, Hunter could have taken the acknowledgment, for the reason that the mortgage became effective at a time when Hunter did not own the land, and had no interest in the proceeds derived therefrom, except as these proceeds were turned over to him by Bruhn. Treating Hunter, then, as the purchaser of the land from Dunn, and as Bruhn's grantor, as he no doubt was, he had such interest in a loan made by Bruhn from some third party as would inhibit him from taking the acknowledgment to a mortgage made to such third party. His interest was in receiving $1,000 from Bruhn in payment for the land. How he received it was an entirely immaterial matter, so far as his relation to Bruhn as grantor was concerned. The ultimate question here is this: May the grantor of a mortgagor of land, who executes a mortgage to the grantor's principal, take the acknowledgment of the mortgage? We think he may. He has no direct interest in the mortgage, and no interest in the subject-matter, except, perhaps, as a vendor. He has no right in or to the proceeds of the mortgage, except as the mortgagor may give him that right by voluntarily turning over the proceeds. It certainly will not do to hold that an agent or cashier of a bank, who holds a claim against a third person, cannot take the acknowledgment of an instrument made to secure a loan of money borrowed from the principal with which to pay

the agent's or cashier's claim. The bank had the sole and entire interest in the loan, and the disposition of the proceeds cannot affect that interest. In the case at bar the bank loaned the entire amount represented by the notes. True,. part of that amount went to extinguish a claim held by it against the notary who took the acknowledgment, and the remainder to that same notary as his profit in a land transaction, but, so far as the bank was concerned, it had the sole and entire interest in the loan made to Bruhn. The decree of the superior court is correct, and it is AFFIRMED.