### GUSTLIN v. WHITHAM et al.

### In re SPARBOE.

(District Court, N. D. Iowa, C. D. September 1, 1923.)

### No. 56.

1. **Acknowledgment** ⬅20(3)—**Officer of corporation not disqualified to take acknowledgment of instrument to corporation, unless personally interested.**

    Acknowledgment of an instrument running to a corporation before an officer of the corporation is not invalid, unless such officer is a stockholder or otherwise personally interested in the transaction.

2. **Assignments for benefit of creditors** ⬅335(1)—**Mortgages held not merged in subsequent conveyance.**

    Mortgages executed by bankrupt in favor of certain creditors *held* not merged in a subsequent conveyance of the lands for the benefit of such creditors and others, but the conveyance *held* subject to the mortgages.

3. **Assignments for benefit of creditors** ⬅8—**Transaction held not "general assignment."**

    A transaction in which bankrupt executed conveyances of land and bill of sale of personal property for the benefit of certain creditors, though it included all his property subject to execution, *held* not a

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

"general assignment," within Code Iowa 1897, § 3071, and invalid because not for the equal benefit of all creditors, but the arrangement *held* to have been made at the instance of bankrupt for his own interest, and not as absolute conveyances, but by way of security.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, General Assignment.]

**4. Assignments for benefit of creditors ⬥�longrightarrow5—Whether transaction is general assignment is question of intent.**

Under the law of Iowa, established by decision, whether a transaction amounts to a general assignment for the benefit of creditors is a question of intent.

**5. Bankruptcy ⬥⟶175—Transfer of property by bankrupt held made with intent to "hinder, delay, or defraud creditors."**

A transfer of property by bankrupt *held* made with intent to "hinder, delay, or defraud creditors," within the meaning of Bankruptcy Act, §§ 67e, and 70a, subd. 4 (Comp. St. §§ 9651, 9654), and the property recoverable under section 70e, where the transferees knew at the time that bankrupt was insolvent and that the transfer was made by him for the purpose of obtaining a release of his exempt homestead from a mortgage lien.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Hinder, Delay, and Defraud.]

**6. Vendor and purchaser ⬥⟶231(15)—Record of deed without valid acknowledgment does not impart notice.**

The record of a deed, acknowledgment of which is void, because taken by an interested party, does not impart constructive notice.

**7. Bankruptcy ⬥⟶161(1)—Under Iowa statute, recording of deed not essential to validity against trustee.**

Recording of a deed to real estate not being essential to its validity, under Code Iowa 1897, § 2925, except as against subsequent purchasers without notice, recording is not required by Bankruptcy Act, § 60b (Comp. St. § 9644), to start running the four-months period prior to bankruptcy, which will bar a suit by a trustee to set aside the deed as a preference.

**8. Bankruptcy ⬥⟶161(1)—Trustee held entitled to avoid bill of sale as preference, where not recorded until within four months.**

A trustee, being vested by Bankruptcy Act, § 47a, subd. 2 (Comp. St. § 9631), with all the rights of a creditor, may maintain a suit to set aside as a preference a bill of sale made by bankrupt, which was not recorded until within four months prior to bankruptcy, where under the law of the state recording is essential to its validity as against creditors.

In Equity. Suit by Clyde C. Gustlin, trustee in bankruptcy of Carl Sparboe, against W. L. Whitham and others. Decree for complainant in part.

The plaintiff, Clyde C. Gustlin, as trustee in bankruptcy of one Carl Sparboe, filed his bill, in which he prays for the annulment of a certain contract of assignment, a deed conveying 400 acres of land in Kossuth county, Iowa, and a bill of sale of certain live stock and other personal property, executed by the bankrupt on July 18, 1921, running to the defendants W. L. Whitham, Gilbert Knudson, and Max M. Hemingway, for the use and security of the other defendants, Hamilton County State Bank, Randall Savings Bank, State Bank of Ellsworth, George P. Christianson, and John H. Sparboe, the above-named banks being Iowa corporations.

The bill in substance alleges the adjudication of Carl Sparboe as a voluntary bankrupt on November 29, 1921, upon his petition filed that day, the election and qualification of the plaintiff as trustee, and that on the 18th day of July, 1921, said bankrupt, being insolvent, with knowledge thereof by the

---

⬥⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

defendants, and with intent to prefer defendant banks, said Christianson, and John H. Sparboe, his creditors, and with further intent to defraud other creditors, executed and delivered to the defendants Whitham, Knudson, and Hemingway the three instruments above named, conveying all of his property not exempt from execution, for the use and security of the last-named five defendants, with preference to said five named creditors, and in fraud of his other creditors; that the deed and bill of sale were executed in pursuance of the terms of a contract of assignment and were all one transaction; that there was no present consideration given for said conveyances, the sole consideration being pre-existing debts, and that they were executed with intent on the part of the bankrupt to hinder, delay, and defraud his existing creditors, of which intent all defendants were fully advised; that the effect of said transfer, if enforced, will enable the creditors for whose use and security it was made to obtain a greater percentage of their debts than other creditors of the same class, and that the defendants had reasonable cause to believe at the time of the consummation of said transfers that preferences were intended; that said conveyances taken together constitute an assignment of all property of the bankrupt not exempt from execution, for the benefit of only a part of his creditors, and not in proportion to the claims of all of his creditors on the date of their execution as required by section 3071 of the 1897 Code of Iowa; that said transfers were fraudulent, for at the time of their execution and as a part of the transaction a consideration of $500, paid him by the defendants, bankrupt promised not to file a voluntary petition in bankruptcy until after the expiration of four months, bankrupt being a farmer and his principal business the tilling of the soil; that the transactions of July 18, 1921, were a part of a scheme devised and entered into by the bankrupt and the defendants long prior to that date for the purpose of defrauding the creditors of the bankrupt; that as a part of said scheme the bankrupt on May 2, 1921, executed and delivered to the defendant Hamilton County State Bank an instrument in the form of a mortgage conveying the east three-quarters of the north half of section 16, township 86 north, range 23 west of the 5th P. M., Kossuth county, Iowa, which purported mortgage was made subject to a first mortgage of $24,000; that on the same date the bankrupt executed and delivered to the defendant State Bank of Ellsworth a real estate mortgage conveying the southwest quarter and the southwest quarter of the southeast quarter of section 9, township 86 north, range 23 aforesaid, which purported mortgage was subject to two other mortgages aggregating $28,000; that as a part of said scheme to defraud the defendant creditors agreed with the bankrupt to release from said mortgage of May 2d bankrupt's homestead, being the northeast quarter of the northwest quarter of said section 16, which release was thereafter on July 18, 1921, executed and recorded; that said purported mortgages of May 2, 1921, are void and of no effect as against the plaintiff, for that the respective acknowledgments thereof by the bankrupt were made before officers of the defendant banks, grantees in said mortgages, as well as because of the fraudulent acts alleged in connection with the making and execution of the same; that it was the intent of all defendants that the mortgages of May 2, 1921, should merge in the contract, deed, and bill of sale made on July 18, 1921; that the defendants were advised and understood that the mortgages of May 2, 1921, were invalid, for the reason that the signature of the wife of the bankrupt had been obtained by fraud, and by reason of the physical and mental condition of the wife at the time her signature was obtained she did not know and understand the meaning of her act, and that her signature was procured by undue influence of the bankrupt and the defendants; that the instruments of July 18, 1921, were intended to supersede and substitute the mortgages of May 2, 1921, with the hope and intention of substituting a valid security for an invalid security, providing the bankrupt could be induced to refrain from voluntary bankruptcy for the period of four months thereafter, and further for the purpose of eliminating from the preliminary arrangement of May 2d the inequality of credit among themselves; that the reasonable value of said lands in excess

of prior first mortgages was the sum of $75,000, and the reasonable value of the personal property conveyed by the bill of sale was $6,000.

The defendants, answering, admit the execution of the instruments of July 18, 1921, but deny that they were executed by the bankrupt or received by the defendants, either with the intent to prefer the defendants or defraud the other creditors of the bankrupt, and deny that said instruments conveyed all of the property of the bankrupt not exempt from execution. Defendants further deny that there was no present consideration given for said conveyances, and deny that they were executed with intent to hinder, delay, and defraud the bankrupt's other creditors. But the defendants aver that on May 2, 1921, the bankrupt executed and delivered to the Hamilton County State Bank a mortgage on the east three-quarters of the north half of section 16 aforesaid, to secure an indebtedness of $30,000, owing by the bankrupt to the Hamilton County State Bank, Randall Savings Bank, and George P. Christianson, and that as a part of the consideration of the execution of the instruments of July 18, 1921, the Hamilton County State Bank, Randall Savings Bank, and George P. Christianson caused said mortgage to be released as to the northeast quarter of the northwest quarter of said section 16, said 40 acres being the bankrupt's homestead, which was of the value of $12,000, and which release was to the detriment of said defendants in the sum of $10,000; that the State Bank of Ellsworth advanced to the bankrupt on the execution of the instruments of July 18th, the sum of $2,000. The defendants further deny that the effect of the transfers of July 18th would be to enable the defendants Hamilton County State Bank, Randall Savings Bank, State Bank of Ellsworth, and George P. Christianson to obtain a greater percentage of their debts than they would have received without said instruments, and that said instruments afforded grounds for said defendants to believe that said transfers would give them a preference within the meaning of the acts of Congress relating to bankruptcy, but, on the contrary, that the defendants were possessed of valid and sufficient security before the execution of the instruments of July 18th, which were of greater value than they had through the execution and delivery of said instruments: that at the time of the execution and delivery of the instruments of July 18th there was neither equity in nor value in said property that would enable defendant John H. Sparboe to secure anything on his indebtedness. The defendants deny that said instruments so executed on July 18th, taken together, constitute an assignment of all of said bankrupt's property not exempt from execution, or an assignment for the benefit of creditors in derogation of section 3071 of the Code of Iowa, or that said conveyances were fraudulent. Defendants further deny the payment to the bankrupt of $500 as an inducement for bankrupt to refrain from filing his petition in bankruptcy within the period of four months, or that the bankrupt did so promise.

Defendants, further answering, admit that on May 2, 1921, bankrupt executed and delivered to the Hamilton County State Bank a mortgage on the east three-quarters of the north half of said section 16, and that on May 2, 1921, bankrupt executed and delivered to the State Bank of Ellsworth a mortgage on the southwest quarter and the southwest quarter of the southeast quarter of said section 9, but defendants deny that the execution of said mortgages entered into any purpose of defrauding creditors of the bankrupt, or that they were executed as a part of any scheme to defraud creditors. The defendants admit that they released from the lien of the mortgage of May 2d the homestead of the bankrupt, but deny that there was any fraud in so doing. The defendants deny that the mortgages of May 2d were void because of their being acknowledged before officers of the defendant banks or because of any fraudulent acts alleged by the plaintiff, and further deny any merger or intention to merge the mortgages of May 2d with the instruments of July 18th, and deny that they were advised that the instruments of May 2d were invalid by reason that the signature of the wife of the bankrupt was obtained by fraud, or that the wife of the bankrupt was in such condition physically or mentally at the time her signature was obtained that she did not know or understand the meaning of her act, or that she signed the same by reason of undue influence, and allege that said mort-

gages were valid and were legally executed by the bankrupt's wife. The defendants deny the instruments of July 18th were executed and taken with the intent and hope of obtaining valid securities in lieu of invalid securities, or that the instruments of May 2d were at the time invalid or fraudulent. The defendants deny that the real estate conveyed by the deed of July 18th was of the value of $75,000, in excess of prior mortgages, and allege such value not to exceed $40,000, and deny that the fair and reasonable value of the personal property and crops conveyed by the bill of sale of said date was $6,000, and allege that such value was less than $4,000. Defendants further allege that the wife of the bankrupt died in the month of August, 1921, and that whatever interest she may have had in any of the real estate described in said instruments ceased and determined.

Defendants, further answering, say that the allegations of the plaintiff's bill relative to the signature of the wife of the bankrupt, and in view of the other allegations contained in said bill, do not constitute a claim that may be asserted by the plaintiff, and that said matters are immaterial and redundant, and do not entitle the plaintiff to any relief. Defendants, further answering, aver that the plaintiff's bill shows on its face that the three instruments of July 18th were executed more than four months prior to the adjudication in bankruptcy of Carl Sparboe, and that, if they did operate as a preference to defendants, or any of them, such does not entitle plaintiff to relief. Defendants, further answering, aver that plaintiff's bill shows on its face that bankrupt was indebted to defendants Hamilton County State Bank, Randall Savings Bank, State Bank of Ellsworth, and George P. Christianson at the time he executed the mortgages of May 2d, and that said mortgages were executed more than four months prior to the time of the bankrupt's adjudication, and that because thereof, and of the failure of plaintiff to allege that there was no indebtedness for which said mortgages were executed, the facts so stated show on their face that the plaintiff is not entitled to the relief asked. Defendants, further answering, aver that, since they have had the deeds to the lands described in plaintiff's bill, they have paid interest and taxes on the real estate therein described in good faith and in an amount of more than $5,000, none of which has been repaid by the trustee, or any one, or any offer thereof.

Upon issue joined, the cause was referred to John M. Schaupp, Jr., as special master, to take testimony upon the issues and report his findings of fact to the court. The testimony was taken by the respective parties before special master, who reported 47 separately numbered findings. Within the time permitted by equity rule 66 (198 Fed. xxxvii, 115 C. C. A. xxxvii), the plaintiff and defendants filed certain exceptions. The plaintiff excepted to the master's failure to find and report the fact "that on the 18th day of July 1921, O. J. Henderson was a stockholder in the defendant Hamilton County State Bank." The defendants Whitham, Knudson, Hemingway, the three defendant banks, and Christianson, jointly filed five exceptions to findings numbered 12, 13, 19, 21, and 29, respectively, and defendant John H. Sparboe separately filed exception to finding No. 13. The exceptions filed by the respective defendants, when stripped of all argument, rest upon the contention that the respective findings excepted to are not supported by the evidence. I do not set out seriatim all of the findings of the special master, as many of them cover facts not disputed on the issues, some are in the nature of legal conclusions, and but few other than those excepted to require special notice for the purposes of this opinion. Any findings pertinent to the discussion will be noticed at the proper point in the discussion. The five findings excepted to are as follows:

"(12) That the real estate described in the deed, Exhibit No. 7, and the personal property described in the bill of sale, Exhibit No. 8, constituted all of the property owned by Carl Sparboe on July 18, 1921, not exempt from execution.

"(13) That the contract, Exhibit No. 6, and the deed, Exhibit No. 7, executed pursuant thereto, were made for the purpose and with the intention of hindering, delaying, and defrauding other creditors of Carl Sparboe."

"(19) That the effect of the contract, Exhibit No. 6, together with the deed, Exhibit 7, and the bill of sale, Exhibit 8, was to give the defendants Hamilton County State Bank, Randall Savings Bank, State Bank of Ellsworth, George P. Christianson, and John H. Sparboe a greater percentage of the debts owing to them than to other creditors of the said Carl Sparboe, and that the benefits were confined to said defendants to the exclusion of all other creditors of Carl Sparboe."

"(21) That it was the intention of the Hamilton County State Bank, Randall Savings Bank, State Bank of Ellsworth, and George P. Christianson that the contract, Exhibit 6, should determine their rights to participate in the real and personal property transferred, and that said contract, Exhibit 6, should supplant and displace the mortgage deeds given by Carl Sparboe and Nellie Sparboe, his wife, on May 2, 1921, and identified as Exhibits 9 and 10."

"(29) That the increase in the amount of the indebtedness owng by Carl Sparboe to the Hamilton County State Bank, from the sum of $7,900 to $11,-300, was not a present advance of $3,400 to Carl Sparboe, but was a mere shifting of indebtedness from the Randall Savings Bank to the Hamilton County State Bank, such that it would not appear that the Randall Savings Bank had loaned Carl Sparboe an amount in excess of the legal limit imposed by the laws of the state of Iowa."

Healy, Thomas & Healy, of Ft. Dodge, Iowa, for plaintiff.
Burnstedt & Hemingway, of Webster City, Iowa, for defendants.
Martin & Alexander, of Webster City, Iowa, for creditors.

SCOTT, District Judge (after stating the facts as above). The foregoing statement of issues and proceedings are I think sufficient as a basis for the disposition of all disputed questions of fact and law raised on the submission. Analysis of the bill discloses that five general contentions or propositions are put forward as grounds for relief by the plaintiff. I will state these, not in the order pleaded in the bill, as I think they may be considered chronologically to better advantage:

(1) Were the conveyances of May 2, 1921, and the conveyances of July 18, 1921, all executed in pursuance of a general scheme and conspiracy for the purpose of defrauding creditors?

(2) Did the conveyances of May 2, 1921, merge in the conveyances of July 18, 1921?

(3) Do the conveyances of July 18, 1921, constitute a general assignment with preferences, in contravention of section 3071 of the 1897 Code of Iowa?

(4) Are the conveyances of July 18, 1921, invalid, because executed with intent to hinder, delay, and defraud creditors, within the meaning of section 67e, or section 70a, or section 70e, of the Bankruptcy Act of 1898 as amended?

(5) Would the conveyances of July 18, 1921, if enforced, effect a preference, within the meaning of section 60 of the Bankruptcy Act?

Other subsidiary questions are involved both within the issues and the proof, but they are all put forward as a basis for some one of the above general propositions. They will therefore be discussed in connection with the five propositions above set forth.

The first proposition, "Were the conveyances of May 2, 1921, and the conveyances of July 18, 1921, all executed in pursuance of a general scheme and conspiracy for the purpose of defrauding creditors?" brings one to a consideration of the only challenge made in the bill to the validity of these mortgages when executed. The second proposition, relative to merger, from its very nature assumes the original va-

lidity of the mortgages of May 2d. The special master returns no finding directly involving the first proposition, and no exception is taken to his failure so to do. Indeed, the findings taken as a whole preclude the inference that the instruments of May 2d were executed in pursuance of any general scheme to defraud. They were executed to secure valid and subsisting indebtedness. The special master finds that at the time of their execution the mortgagees and beneficiaries did not know of the bankrupt's insolvency, and this finding is not challenged by exception. The only finding excepted to, which relates to this transaction, is finding 29:

"That the increase in the amount of the indebtedness owing by Carl Sparboe to the Hamilton County State Bank, from the sum of $7,900 to $11,300, was not a present advance of $3,400 to Carl Sparboe, but was a mere shifting of indebtedness from the Randall Savings Bank to the Hamilton County State Bank, such that it would not appear that the Randall Savings Bank had loaned Carl Sparboe an amount in excess of the legal limit imposed by the laws of the state of Iowa."

It appears that when the mortgages of May 2d were about to be prepared the Randall Savings Bank was carrying the bankrupt for $12,-620.65. This was under the statute of Iowa an excessive loan. The Randall Savings Bank insisted on its reduction, and the Hamilton County State Bank which was carrying the bankrupt for $7,900, and accrued interest was willing to carry the bankrupt for an additional amount to relieve the Randall Savings Bank in this respect. Accrued interest on all of the indebtedness was computed and the Hamilton County State Bank advanced the bankrupt for the purpose of taking up and shifting a part of his indebtedness to the Randall Savings Bank, $3,000, or approximately that sum, and in drawing the new notes one for $11,300, was drawn to the Hamilton County State Bank to evidence its previous debt, accrued interest and the advance in behalf of the bankrupt to the Randall State Bank. This was not a mere shifting of book entries or of indebtedness for a colorable purpose, as implied in the twenty-ninth finding of the special master, but was equivalent to a direct loan to the bankrupt. I think, therefore, the exception to finding 29 of the master is well taken and should be sustained, and that finding set aside; and it is so ordered.

[1] I think there is no substantial evidence tending to show that either of the mortgages of May 2d were tainted with fraud. These mortgages were evidence of valid and subsisting security. Something is said in the last section of paragraph 9 of the bill as to these mortgages being void and of no effect as against plaintiff, for the reason that their record did not give constructive notice to the trustee or subsequent creditors on account of the acknowledgments having been taken before officers of the defendant banks. This contention is not well taken. But one of the instruments was executed before an officer of any of the banks, and such officer was not a stockholder or personally interested in the transaction. The acknowledgment of an instrument running to a corporation before an officer of such corporation does not invalidate the acknowledgment, unless such officer is a stockholder or otherwise personally interested in the transaction. Bardsley v. German American Bank, 113 Iowa, 216, 84 N. W. 1041; Bartlett v.

Bolte, 193 Iowa, 1063, 188 N. W. 814. I therefore find these instruments legally acknowledged and their record sufficient under the recording act of Iowa. The pleadings raise the further question indirectly of the mental competency of the bankrupt's wife to execute the instruments of May 2d, but no evidence is offered tending to support such contention, nor is there any finding of the special master thereon or exception to the absence of such finding. For the purposes of further discussion I therefore assume the entire validity of the mortgages of May 2d.

[2] The second proposition, and the only other question involving the mortgages of May 2d, is: Were they merged in the instruments of July 18th? The plaintiff contends for such merger for the apparent purpose of annihilating these instruments and thus leaving the security carried therein to be supported only by the instruments of July 18th. As to whether these instruments merge with the instruments of July 18th is a question of the intent of the parties concerned, as disclosed both by the subsequent instruments, the interests of the parties, their acts, and other surrounding circumstances. It appears very clearly, from the master's findings and from the testimony, that the transaction of July 18th was not one of the defendants' seeking. The bankrupt and his wife having mortgaged their homestead, upon subsequent consideration and consultation with their attorney, determined to undo that part of the transaction of May 2d if possible. They approached the defendants, and after much controversy proposed a substitution of security for the homestead. The proposition did not appeal to the defendants. The bankrupt, through his attorney, resorted to so-called "argument," which involved threats and pressure little short of absolute duress. It was clearly intimated that bankrupt would raise the question of his wife's mental and physical capacity to execute the instruments of May 2d. There were, apparently, threats of immediate resort to bankruptcy, and there at least confronted the defendants the prospect of protracted and expensive litigation. Considerations of sympathy and humanity were not overlooked, and finally the arrangement of July 18th was agreed to. The 40 acres composing the bankrupt's homestead was agreed to be released from the mortgage of May 2d running to the Hamilton County State Bank, and it was subsequently released from such mortgage, and the homestead only was released, leaving the mortgage intact upon the remaining 200 acres in section 16. This was one circumstance strongly indicating an intention not to merge the earlier mortgages.

The mortgages and notes of May 2d were retained by the release uncanceled, and when the deed of conveyance of July 18th was drawn by its terms it was expressly made subject to mortgages of record aggregating $100,000. Now, there were mortgages prior to May 2d of record aggregating $52,000, and the mortgages of May 2d aggregated slightly more than $48,000. It is without question that it requires the mortgages of May 2d, taken with the previous mortgages, to aggregate the $100,000 of mortgages recited in the mortgages of July 18th. When we stop to consider the fact that the bankrupt was insolvent on July 18, 1921, and that the defendants had acquired knowledge of that fact

by that time, and that the bankrupt was at liberty to take advantage of the Bankruptcy Law at any moment, it is not at all strange that the defendants would prefer to hold their previous mortgages intact. Indeed, it would be remarkable for them to voluntarily elect a merger of the earlier instruments. It seems to me that there was no merger of the mortgages of May 2d, and that the acts of the parties clearly expressed an intention not to merge. And, even if no such intention was evidenced by the acts of the parties, I think that under the circumstances a merger would fall with the fall of the instruments in which merged. I do not think the plaintiff can consistently say that the mortgages of May 2d merged in the instruments of July 18th and in the same breath say that the instruments of July 18th were void. The rule and equitable maxim, that he who would have equity must do equity, applies to trustees in bankruptcy with equal force as to other individuals. I hardly think that the twenty-first finding of the special master should be interpreted as a finding that the instruments of May 2d merge with the instruments of July 18th. It was undoubtedly true that the parties contemplated the observance of the instruments of July 18th, but such intent was not consistent with the further intent to maintain intact the previous instruments. If, however, such finding be interpreted as a finding of merger, I think it unsupported by the evidence, and to that extent it is set aside.

[3] The third proposition relates to the instruments of July 18th. Did they, when taken together, in the circumstances, amount to a "general, assignment * * * by an insolvent * * * for the benefit of creditors * * *", and, if "for the benefit of all his creditors, in proportion to the amount of their respective claims"? (Code Iowa 1897, § 3071.) It must be conceded that, but for certain circumstances connected with the transaction, these instruments, taken together, embody many, if not all, of the elements of a general assignment. The special master found that the transaction disposed of all of the bankrupt's property not exempt from execution, and this finding is not excepted to. Counsel, however, discussed the question in argument, and examination of the evidence rather strongly indicates that there were a few head of cattle not exempt and not described in the bill of sale. These cattle were referred to in the testimony as "reactors." There is a paragraph in plaintiff's bill rather strongly implying that there might have been other property. In paragraph 6 plaintiff alleges that the amount of net assets of the estate of the bankrupt which has come into the possession or knowledge of the trustee does not exceed the sum of $2,000. Presumably plaintiff in this sum did not include the property he is now endeavoring to establish title to, as such property would exceed many times $2,000. However, I shall let that matter rest upon the finding of the special master. The fact remains that this instrument was not the result of any desire or purpose on the part of the bankrupt to distribute his property among his creditors. On the contrary, it was for the entirely selfish purpose of regaining his homestead. The transaction was not the ordinary voluntary conveyance to a trustee for the benefit of his creditors, the assignor thus relinquishing all dominion over such property. It was a cold, calcu-

lated, arm's length transaction with adversaries, upon a stipulated consideration moving directly to himself.

Not only this, but the instrument now called an assignment was one of mutual obligation. It contemplated in express terms, not immediate conversion of the property, but its retention; it stipulated for the leasing of the lands, and to whom they should be in preference leased, viz. the bankrupt's brother. It stipulated for retaining the stock and personal property on the farm for use by such brother or his agents. Now, these things, in connection with subsequent facts appearing in evidence; that is, that not only did the bankrupt's brother lease the lands from defendants in pursuance of the contract, but he immediately subleased to the bankrupt or members of his family, or at least made some arrangement with them for the use of the farm. The bankrupt's testimony is as follows:

"My brother that rented the farm got half the crop, and the bank or trustees the other half. John put some cattle in the pasture in October. The boys and I have farmed the farm for 1922; I can't say on just what terms. John was helping us get along."

[4] It is quite clear, when one considers this testimony in connection with the stipulation and reservation in the collateral contract, that the bankrupt was far from contemplating the matter as being entirely for the benefit of his creditors. Now, it is well established by the decisions of the Supreme Court of Iowa that in that state the question as to whether a transaction amounts to a general assignment for the benefit of creditors is one of intent. Roberts, Butler & Co. v. Press, 97 Iowa, 475, 66 N. W. 756; Letts, Fletcher & Co. v. McMaster & Dryden, 83 Iowa, 449, 49 N. W. 1035; Kohn Brothers v. Clement, Morton & Co., 58 Iowa, 589, 12 N. W. 550; Cadwell's Bank v. Crittenden, 66 Iowa, 237, 28 N. W. 646; Diemer v. Guernsey, 112 Iowa, 393, 83 N. W. 1047.

In view of all these circumstances I am of opinion that the transaction of July 18th was not a general assignment for the benefit of creditors, but was a security, and the special master seems to have so found. The special master's finding was:

"9. That said deed, Exhibit No. 7, was intended by the parties as a mortgage and not an absolute conveyance."

And in No. 11 the same finding is made as to Exhibit 8, the bill of sale, and no exception has been taken to either of these findings. Now, a general assignment, as contemplated by section 3071 of the 1897 Code of Iowa, is not a mortgage, but an absolute conveyance for the benefit of creditors.

[5] The fourth proposition is:

"Are the conveyances of July 18, 1921, invalid because executed with intent to hinder, delay, and defraud creditors within the meaning of section 67e, or section 70a, or section 70e of the Bankruptcy Act as amended?"

The special master in finding 13 in substance so found, and an exception is urged to that finding. The special master found:

"(14) That on the 18th day of July, 1921, W. L. Whitham, Gilbert Knudson, Max M. Hemingway, the Hamilton County State Bank (through its officers and

agents), Randall Savings Bank (through its officers and agents), George P. Christianson, and John H. Sparboe, knew that Carl Sparboe was insolvent."

No exception has been taken to this finding, and I think it amply supported by the evidence. We therefore start with the proposition that the bankrupt at the time of the transaction was insolvent, and that the defendants all knew of that fact. Defendants also knew that the bankrupt was transferring, in consideration of a release of his homestead, all or substantially all of his property not exempt from execution. They therefore must have known that the effect of the transfer, if enforced, would be to give the beneficiaries a greater per cent. than any other creditors of the same class. They further knew that the purpose and intent of the transfer by the bankrupt was thereby to obtain a release of his homestead. Therefore there was on the face of the transaction a selfish benefit to the bankrupt as the moving factor. The bankrupt proposed and attempted to convey to the particular defendant creditors all of this personal property, and qualifiedly the equity of redemption in the lands, all of which were general assets, in consideration for the defendants giving up a part of the security which they then held, but which no other creditor could take. It may be said that the defendants had no culpable or fraudulent intent as against any other creditor, and were actuated only by a desire to secure their own debt. I am inclined to think that this is true, and that no actual fraudulent intent was entertained. However, the defendants knew, or should have known, that the motive which actuated the bankrupt was that of gaining a personal advantage, and not merely securing his creditors. With this knowledge on the part of the defendants, the transaction would be fraudulent within the meaning of the sections of the Bankruptcy Act above mentioned, to the extent of all property secured under the conveyances of July 18th, and not embraced within the existing mortgages of May 2d. I therefore think the exception to finding 13 should be. and hereby is, overruled.

[6] Fifth:

"Would the conveyances of July 18, 1921, if enforced effect a preference within the meaning of section 60 of the Bankruptcy Act?"

The special master in his nineteenth finding in substance so finds. In my opinion the transaction did constitute a preference in favor of the defendants, voidable under section 60 of the Bankruptcy Act (Comp. St. § 9644), unless that result is defeated by the lapse of more than four months between the execution of the instruments and the filing of the petition in bankruptcy. This brings us to a consideration of the effect of the record of the deed and bill of sale of July 18th. The plaintiff excepted to the failure of the master to find "that on the 18th day of July, 1921, O. J. Henderson was a stockholder in the defendant Hamilton County State Bank." I think the special master should have so found. The evidence establishes that fact beyond dispute. I therefore sustain the exception of the plaintiff in this respect and find such fact. It appears without controversy that both the deed and bill of sale were acknowledged before the said O. J. Henderson, a stockholder in the Hamilton County State Bank, one of the interested parties to the transaction, and in such circumstances such acknowledgment

thereof would be void, and the admission to record of such instrument under such acknowledgment would not impart constructive notice.

[7, 8] Now, upon this point a distinction should be made between the effect of this upon the deed, Exhibit 7, and the bill of sale, Exhibit 8. As to the deed, the trustee in bankruptcy is not a subsequent purchaser without notice, and therefore registration of the instrument is not required, within the meaning of section 60b of the Bankruptcy Law, by section 2925, Iowa Code of 1897. On the contrary, the trustee in bankruptcy, as to the bill of sale, the vendor or mortgagor retaining actual possession, will be deemed vested with all of the rights, remedies, and powers of a judgment creditor holding execution duly returned unsatisfied, and as to such creditor such bill of sale without record would be invalid.

In my opinion, equity and the circumstances of the case require setting aside the contract, deed, and bill of sale of July 18, 1921, so far as they affect the title and right of the trustee in bankruptcy, and that the mortgages of May 2, 1921, running to the Hamilton County State Bank as security to itself and the other defendants named and the State Bank of Ellsworth, should be held valid and enforceable, and that the trustee should take title subject thereto.