(February 15, 1912.)

## ELIZABETH H. HARRIS and GEORGE S. YOUNG, Respondents, v. WILLIS E. REED et al., Appellants.

[121 Pac. 780.]

REAL PROPERTY—SUIT TO QUIET TITLE—INNOCENT PURCHASER FOR VALUE —UNRECORDED CONVEYANCE—UNACKNOWLEDGED CONVEYANCE—RECORD OF ACKNOWLEDGED CONVEYANCE—CONSTRUCTIVE NOTICE.

(Syllabus by the court.)

1. Under the provisions of sec. 3153, Rev. Codes, before any instrument may be recorded, its execution must be acknowledged by the person executing it, or if executed by a corporation, by its president or secretary, or proved and certified in the manner prescribed by statute, unless such instrument is one that is expressly excepted from the requirements of the statute as to such acknowledgment or proof.

2. Under the provisions of sec. 3159, Rev. Codes, a recorded conveyance of real property which has not been acknowledged or proved and certified as required by law, does not impart constructive notice of its contents to subsequent purchasers and mortgagees.

3. Under the provisions of sec. 3159, in order that a recorded conveyance of real property may impart constructive notice of its contents to subsequent purchasers and mortgagees, it must be "acknowledged or proved and certified" as well as recorded.

4. The record of a written instrument which is not by law entitled to be recorded imparts no constructive notice to anyone.

5. The conveyance of real property which sec. 3159 provides shall constitute constructive notice to "subsequent purchasers and mortgagees" is a conveyance made by the person from whom such "sub-

sequent purchaser or mortgagee" is compelled to deraign his title, and has no reference to and does not include conveyances made by strangers to the record title.

6. The subsequent purchasers of whom sec. 3159, Rev. Codes, speaks are those claiming title under the same grantor, and it is to these only the record is constructive notice.

7. Facts examined in this case, and *held* that they do not support a finding that certain purchasers from the original grantor had forfeited their contract and the payments made thereunder.

8. A forfeiture is a harsh remedy and will not be allowed except upon clear proof of the breach of the terms of the contract upon which such forfeiture shall be declared. ·

APPEAL from the District Court of the Ninth Judicial District for Fremont County. Hon. James G. Gwinn, Judge.

Action to quiet title. Judgment in favor of the plaintiffs. Defendants appeal. Judgment *affirmed* as to one of the respondents and *reversed* as to one of them.

N. D. Jackson, for Appellants.

A purchaser is charged with notice of every fact shown by the records, and is presumed to know every other fact which an examination suggested by the record would have disclosed. (*Northwestern National Bank v. Freeman*, 171 U. S. 620, 19 Sup. Ct. 36, 43 L. ed. 307.)

An instrument properly recorded is notice to the world, not only of facts therein expressly set forth, but also of all other material facts which an inquiry, thereby reasonably suggested, would have developed. (*Loser v. Plainfield Saving Bank*, 149 Iowa, 672, 128 N. W. 1101, 31 L. R. A., N. S., 1112.)

If the appellants were entitled to relief against Young, they are entitled to the same relief against respondent Harris, who took with notice. (*Wilson v. Emig*, 44 Kan. 125, 24 Pac. 80; *Peasley v. Hart*, 65 Cal. 522, 4 Pac. 537; *Laverty v. Moore*, 33 N. Y. 658.)

Forfeitures are not favored, and that construction will be adopted which will avoid the forfeiture. (*Post v. Garrow*,

18 Neb. 683, 26 N. W. 580; *Continental Ins. Co. v. Vanlue,* 126 Ind. 410, 26 N. E. 121, 10 L. R. A. 843.)

A contract to convey by good and sufficient deed has reference not only to the form of the deed, but to its effectiveness to convey a fee simple title. (*Taft v. Kessel,* 16 Wis. 273; *Cunningham v. Sharp,* 30 Tenn. (11 Humph.) 116; *Story v. Conger,* 36 N. Y. 673, 93 Am. Dec. 546; *Thompson v. Hawley,* 14 Or. 199, 12 Pac. 276.)

Young has never been in a position to give a deed effective to convey a fee simple title, and being unable to perform on his part, he could not declare a forfeiture because of the vendee's failure to make deferred payments within the specified time. (*Higginbotham v. Frock,* 48 Or. 129, 120 Am. St. 796, 83 Pac. 536; *Sievers v. Brown,* 36 Or. 218, 56 Pac. 171; *Getty v. Peters,* 82 Mich. 661, 46 N. W. 1036, 10 L. R. A. 465; *Warren v. Crew,* 22 Iowa, 315; *Wheeling Creek Gas Co. v. Elder,* 54 W. Va. 335, 46 S. E. 357; *Mix v. Beach,* 46 Ill. 311; *Converse v. Blumrich,* 14 Mich. 109, 90 Am. Dec. 231.)

B. H. Miller, and Millsaps & Moon, for Respondents.

"A purchaser of property takes free from unrecorded equity existing between former owners and third persons." (*Duson v. Roos,* 123 La. 835, 49 So. 590.)

There was not a word from the appellants to show that respondent Harris had knowledge of the existing claim of Reed Bros. or Rohwer, and consequently it must be acknowledged that respondent was, as she said, an innocent purchaser without notice for value. (*Woolridge v. Thiele,* 55 Ark. 45, 17 S. W. 340; *Alden v. Trubee,* 44 Conn. 455; *Spicer v. Waters,* 65 Barb. (N. Y.) 227; *Hayden v. Charter Oak D. P.,* 63 Conn. 142, 27 Atl. 232; *Bowman v. Griffith,* 35 Neb. 361, 53 N. W. 140; *D. S. G. & Co. v. G. P. G. & Co.,* 10 Cal. App. 415, 102 Pac. 548; *Ryle v. Davidson* (Tex. Civ. App.), 116 S. W. 823; *Powers v. Perry,* 12 Cal. App. 77, 106 Pac. 595; *Fowles v. Bentley,* 135 Mo. App. 417, 115 S. W. 1090; *Osceola L. Co. v. C. M. & L. Co.,* 84 Ark. 1, 103 S. W. 609; *Laffare v. Knight* (Tex. Civ. App.), 101 S. W. 1034.)

She would not be charged with notice, for the reason that said contract, not being acknowledged, would impart no notice whatever, either constructive or otherwise, and as a subsequent purchaser it would have no binding effect in so far as she is concerned. (*Reid v. Kleyenstauber,* 7 Ariz. 58, 60 Pac. 879; *Lee v. Murphy,* 119 Cal. 364, 51 Pac. 549, 955; *Fisher v. Cowles,* 41 Kan. 418, 21 Pac. 228.)

### STATEMENT OF FACTS.

This action was commenced for the purpose of quieting plaintiff Harris' title to a tract of land described in the complaint and to procure the cancellation of a certain real estate mortgage dated May 7, 1909, made by Paul G. Rohwer and Myrtle Rohwer, his wife, to Willis E. Reed and Claude H. Reed, covering the land described in the complaint, for the sum of $1,300; and also to have canceled a certain contract of sale of the same real estate, made and executed on October 6, 1908, by George S. Young, party of the first part, to Reed Bros., a copartnership composed of Willis E. Reed and Claude H. Reed. The Reeds answered, pleading their contract and mortgage as giving them superior rights and title to the property over the plaintiff. Rohwer and wife also appeared by separate answer and cross-complaint and set up their interest. All the defendants charged that plaintiff was not an innocent purchaser. Judgment was entered in favor of the plaintiff, and defendants, the Rohwers and Reeds, appeal.

The facts involved, the consideration of which are necessary to the determination of the case, are as follows: On October 6, 1908, George S. Young was the owner of the land in controversy, and on that date entered into a contract in writing, whereby he agreed to sell the land in controversy to the Reed Bros. for the sum of $2,500, to be paid as follows: one hundred and fifty dollars paid at the time of the execution of the contract; $350 to be paid on or before December 1, 1908; $400 on or before January 1, 1909, and the balance to be secured by first mortgage on the land, payable in three or four years at eight per cent. Among other things, the contract contained the following stipulation: "If the party of

the first part fails to promptly meet and pay the first and second payments, as provided in this contract, when the same shall become due and payable, the party of the second part shall at the option of the first party forfeit all payments made by him as liquidated damages.'' Young agreed to convey the premises by a good and sufficient warranty deed. This contract was not acknowledged or proven in any manner or form, and under the provisions of sec. 3153 was not entitled to record. It was nevertheless recorded on the 15th day of March, 1910, in the miscellaneous records of Fremont county, the county in which the land was situated. The $150 was paid at the time the contract was executed, and the $350 was paid when due, and the further sum of $400 was paid by Reed Bros. and accepted by Young, but it seems that this payment was made and accepted sometime subsequent to the date on which it became due. About the month of March, 1909, the Reed Bros. sold and transferred their interest in this land and the contract thereon to Paul G. Rohwer. Thereafter and on the 7th day of May, 1909, Rohwer and wife executed a mortgage on this land in favor of Willis E. Reed and Claude H. Reed for the sum of $1,300, which mortgage was thereafter and on the 24th day of September, 1909, placed of record in the records of mortgages of Fremont county. In the meanwhile it had been agreed through correspondence between Young and the Reeds that Young would make his deed direct to Rohwer instead of to the Reed Bros. Rohwer and wife made and executed a mortgage in favor of Young for the balance of $1,600 due on the place and forwarded the same to be delivered on the execution of a deed from Young to Rohwer. This mortgage was executed on a form not in use in this state but which seemed to have been the form commonly used in the state of Nebraska. Some other objections were made to the form of the mortgage and the manner of its execution. It was found, however, at this time that there was a first mortgage of $500 outstanding against the place which had previously been executed by Young and which was a lien on the farm prior and superior to all the transactions, agreements and conveyances hereinbefore enum-

erated. Negotiations were carried on between the parties from time to time looking to an adjustment and settlement of their differences and clearing of the title and carrying out the terms of their several contracts until about the first of March, 1910, when the respondent, Elizabeth A. Harris, acting through the agency of her son, entered into negotiations with Young for the purchase of this farm, and upon that day the son paid $5 as earnest-money and told Young's agent that he would take his mother to see the place soon. About the 20th of March she saw and examined the place and decided to purchase. The negotiations between Mrs. Harris and Young were consummated on April 16, 1910, upon which date Mrs. Harris purchased and Young conveyed the land to her, and she thereupon entered into the possession and occupancy of the premises and has continued ever since to occupy the land and exercise control and dominion over the same. Her deed was recorded December 2, 1910.

AILSHIE, J. (After stating the facts.)—The respondent Harris asserts her claim and rights in this case as an innocent purchaser without notice of the previous conveyances consisting of the contract of sale and the mortgages. No contention is made in the case that she had actual notice of any of these transactions, so the determination of this case is resolved down to the question as to whether or not she had constructive notice under the statute of this state providing for the record of conveyances. Before proceeding further, let it be noted that we use the word ''conveyance'' in this opinion as the same is defined by sec. 3161, Rev. Codes, as embracing ''every instrument in writing by which any estate or interest in real property is created, alienated, mortgaged or encumbered, or by which the title to any real property may be affected, except wills.'' The contract of sale from Young to the Reed Bros. was in fact recorded prior to the purchase of the land by Mrs. Harris. If this record imparted constructive notice to her, then she is not an innocent purchaser; if it constituted no notice to her, she is an innocent purchaser so far as that

conveyance is concerned. Sec. 3153, Rev. Codes, provides, among other things, as follows: "Before any instrument may be recorded, unless it is otherwise expressly provided, its execution must be acknowledged by the person executing it, or if executed by a corporation, by its president or secretary, or proved, and the acknowledgment or proof certified in the manner prescribed by chapter 3 of this title," etc. It needs no further citation of authority to demonstrate that the contract of October 6, 1908, from Young to Reed Bros., not being acknowledged or proved, was not entitled to be recorded.

Sec. 3159, Rev. Codes, dealing with the subject of constructive notice and what imparts constructive notice, says: "Every conveyance of real property, acknowledged or proved, and certified, and recorded as prescribed by law, from the time it is filed with the recorder for record, is constructive notice of the contents thereof to subsequent purchasers and mortgagees." Now, it is clear from the provisions of this section that a conveyance of real estate must be recorded in order to impute constructive notice to a *subsequent purchaser or mortgagee.* It is likewise clear from the plain wording of the statute that it must also be *acknowledged or proved and certified* as well as be recorded in order to impart such notice. The recording of an instrument which is not entitled under the statute to be recorded cannot impart constructive notice to anyone. It has been so held by a long line of authorities. (*Lee v. Murphy,* 119 Cal. 369, 51 Pac. 549, 955; *Merced Bank v. Rosenthal,* 99 Cal. 39, 31 Pac. 849, 33 Pac. 732; *Wilson v. Traer,* 20 Iowa, 231; *Fisher v. Cowles,* 41 Kan. 418, 21 Pac. 228; *First Nat. Bank v. Nat. Livestock Bank,* 13 Okl. 719, 76 Pac. 130; *Williams v. First Nat. Bank,* 48 Or. 571, 87 Pac. 890; *Farmers' Bank v. Stockdale,* 121 Iowa, 748, 96 N. W. 732; *Bardsley v. German-American Bank,* 113 Iowa, 216, 84 N. W. 1041; *Finley v. Babb,* 173 Mo. 180, 73 S. W. 180; *Banbury v. Sherin,* 4 S. D. 88, 55 N. W. 723; 27 Cyc. 1158 and 1209.) And the text-writers take the same view of the matter. (Devlin on Deeds, vol. 1, sec. 464; Brewster on Conveyances, secs. 258 and 366.)

Section 3160 provides that unrecorded conveyances shall be void as against a subsequent purchaser whose conveyance is recorded. (*Froman v. Madden*, 13 Ida. 138, 88 Pac. 894.) It follows, therefore, that the unauthorized recording of the contract from Young to Reed Bros. did not impart constructive notice to a subsequent purchaser and did not furnish notice to the respondent Harris of the previous conveyance of the land purchased by her.

The next question with which we are confronted is: Was the recorded mortgage of May 7, 1910, from Rohwer and wife to Reed Bros. notice to Mrs. Harris that there was an outstanding interest or title to this property? This question involves a consideration of sec. 3159 of the Rev. Codes, above set out, in connection with sec. 3160. The latter section provides: "Every conveyance of real property other than a lease for a term not exceeding one year, is void as against any subsequent purchaser or mortgagee of the same property, or any part thereof, in good faith and for a valuable consideration, whose conveyance is first duly recorded." It will be observed from the provisions of the last-quoted section that a conveyance of real estate other than a lease for a term not exceeding one year is void as against any subsequent purchaser or mortgagee in good faith and for valuable consideration; but in this case the mortgage from Rohwer and wife to Young was recorded long prior to the purchase by Mrs. Harris. This necessarily involves the inquiry as to whether the constructive notice provided for in sec. 3159 is notice only of "every conveyance of real property" from the *true owner and within the claim of record title, or does it mean notice of any pretended conveyance from a stranger to the record title which purports to affect the land in question?* In this state the statute provides no method for keeping a numerical record and index of real property and of conveyances affecting the same. It only provides for alphabetical indexes of grantors and grantees (secs. 2063 and 2068, Rev. Codes). Where, therefore, a stranger to the record title executes an instrument purporting to convey or encumber real estate and causes the same to be recorded, there is no method provided

by the statute of this state whereby a person about to deal with such property would be able to find the record of such conveyance or encumbrance executed by such stranger; nor do the recording laws require the recorder to make any such index, notation or record as would enable either him or any-one else to find such record if he were making an abstract of the title to such property. In view of this condition of this statute, it would seem that the conveyance mentioned in sec. 3159, which constitutes constructive notice to subsequent pur-chasers and mortgagees, must be intended as a conveyance emanating directly, or through mesne conveyances, from the holder of the record title. The legislature certainly did not mean to enact an absurdity or provide for a constructive no-tice that would never be likely to give any actual notice to one who might in fact search the records.

Let us suppose for the sake of illustration that under the statute Mrs. Harris was chargeable with notice of the mort-gage executed by Rohwer and wife in favor of Reed Bros., and that she had gone to the records and actually examined the mortgage and familiarized herself with the contents thereof. What would she have naturally done immediately after examining this mortgage? The answer is obvious. She would have gone to the record to see if Young, in whom the record title rested, had ever parted with or in any way en-cumbered his title, and if not, the inquiry would have ended there. Unless she could find where Rohwer had acquired some interest or title either by direct or mesne conveyances from Young, she would have been justified in at once con-cluding that Rohwer was a stranger to the title and a mere meddler and interloper who had no interest in the property. This illustration leads us to the further question, If she had *actual notice* of the record of the Rohwer mortgage, where would she go to acquire information and learn the true situ-ation with reference to Rohwer's title? Would she go to the records of Fremont county where the recording laws say all conveyances shall be recorded (sec. 3160), or would she go to Nebraska and make inquiry of Rohwer as to the nature of his title? And suppose she did this latter thing, would she

take Rohwer's word for the nature of his contract and con-
veyance and the character of his title, or would she demand
to see the instrument itself? The absurdity of such a position
is at once apparent. It is for just such cases that the re-
cording laws were enacted. (*St. John v. Conger,* 40 Ill. 537.)

If A purchases a tract of land from B and desires to
ascertain the nature and character of B's title and goes to the
county records and finds that the only instrument or convey-
ance on record affecting the title to such land is a patent
from the United States to B, if he has no actual knowledge of
an outstanding unrecorded conveyance, he will be justified in
purchasing, although a mortgage may at the same time be
on record from C to D purporting to cover this identical land.
The statute informs A as well as it informs C and D that if
C, the maker of the mortgage, has any title to the property
mortgaged, he should have it of record in order to hold such
title against a subsequent purchaser in good faith.

In *Kerfoot v. Cronin,* 105 Ill. 609, "A, in whom the record
showed no title, made a deed of trust to B for certain real
estate, which instrument was recorded and recited that it was
given to secure two notes of the grantor to C, in whom the
record of deed showed the title, for the purchase money of
the property, and C indorsed and sold the notes, and, after
the record of the trust deed, sold and conveyed the premises
to innocent parties for value who had *no* knowledge of *any*
prior conveyance by him to A or of the deed from A to B
or the recitals therein, and it was held that the record of
the deed from A to B was no notice to such subsequent pur-
chaser from C or of the existence of the deed or any of the
recitals, A and B both being strangers to the chain of title
acquired by such purchasers." On a rehearing in that case,
the court very tersely stated the proposition as follows:

"It is earnestly insisted by appellant that because it ap-
pears, from the contents of the deed from Hansbrough to
Moore that that deed was made for the benefit of Walker, it
must, therefore, for the purposes of notice, within the mean-
ing of our recording laws, be treated precisely as if made
directly to Walker, which would bring it within the line of

Walker's title. This, as we conceive, is a mere begging of the question, for if a purchaser is not chargeable with notice of the record of a deed because it apparently has no connection with or relation to the title he is purchasing, it is difficult to perceive on what principle he can be held affected with the contents of such deed. . . . .

"If the Hansbrough deed had been made absolutely to Moore without disclosing any interest in Walker, it is conceded a purchaser from Walker would not be affected with constructive notice of either the record or contents of that deed, and to say that because the recitals in that deed, which is *prima facie* between parties who are total strangers to Walker's title, show an interest in the latter, therefore all purchasers from Walker are chargeable with notice of such recitals would be equivalent to holding that in such cases one will be affected with notice or not, according to the character of the recitals,—that is, if they do not affect him in any way he will be deemed to have no notice of them, otherwise he will. Such a construction of our recording laws would make them a mere snare, and lead to great hardships. Hansbrough and Moore are apparent strangers to Walker's title, and hence purchasers from the latter are not presumed to know anything about the Hansbrough deed, and it is only by examining the recitals in it that we ascertain the fact that Walker has any interest in the subject of the conveyance."

Devlin on Deeds, vol. 2, sec. 713, makes the following statement as to the law in such a case and cites *Kerfoot v. Cronin* as authority for his statement: "The grantee in an unrecorded deed placed on record a deed of trust from himself to a third person, reciting that it was made for the purpose of securing two notes to his grantor. After the registration of the trust deed, the grantor in the unrecorded deed conveyed to innocent purchasers for value, and it was held that as the trust deed was not in the chain of their title, the recording of it was not notice to them."

In *Baker v. Griffin*, 50 Miss. 158, the supreme court of Mississippi, after stating the facts of a case wherein a stranger to the record title had executed and caused to be recorded

some instrument purporting to affect the title to the property, stated the rule of law applicable thereto as follows: ''The rule upon this state of facts is understood to be, that the purchaser of the legal title is not bound to take notice of a registered lien or encumbrance of an estate, created by any person other than those through whom he is compelled to deraign his title.''

Devlin on Deeds, sec. 713, says: ''Courts, frequently, in cases where it is not necessary. that they should speak with precision of what persons are embraced under the category of subsequent purchasers, declare in somewhat comprehensive terms that subsequent purchasers are bound by all the information they might obtain from an examination of the records. But the subsequent purchasers of whom the law speaks are those claiming title under the same grantor, and it is to these only that the record is constructive notice.'' As supporting the text, see cases cited in note 9 to the foregoing section. (See, also, *Hager v. Spect,* 52 Cal. 579; *Shackleton v. Church,* 25 Mont. 421, 65 Pac. 428; *Ford v. Unity Church Society,* 120 Mo. 498, 41 Am. St. 711, 25 S. W. 394, 23 L. R. A. 561.)

No claim is made on this appeal that Mrs. Harris had any actual notice of the outstanding conveyances or of the rights or claims of the appellants, and no contention is made in this court that she had not in fact paid the purchase price for the land. So in this view of the case and in the light of the foregoing rules of law, it follows that the judgment as to respondent Harris quieting her title is supported by the evidence and should be affirmed.

A very different question arises, however, in this case as between the appellants and respondent Young. Young came into the case and answered the cross-complaints filed by the Rohwers and Reeds and alleged a forfeiture of their contract and of the money paid by them under the contract, and the court found with him on that issue. This finding is not supported by the evidence. Young is clearly not entitled to a forfeiture of the contract, and it needs no argument or citation of authority to establish this proposition as a principle of equity and justice between the parties. All the cash payments had been made that were called for by the contract

and were accepted and retained by Young, and all that remained to be done by the purchaser Rohwer was to execute a good and valid mortgage in favor of Young for the balance of the purchase price in the sum of $1,600, payable within four years and bearing interest at eight per cent. Under these circumstances, Young could not declare a forfeiture even if the second payment was not made on time. Young, on the other hand, had agreed to execute a good and sufficient deed of conveyance to the property at the time of the execution and delivery of such mortgage. He was clearly not in a condition to do so when the mortgage was tendered, and, so far as the record shows, has never since been in a position to comply with his contract. He shows that fact by his letters written to the appellants. A forfeiture is a harsh remedy, and will not be allowed except upon clear proof of a breach of the terms of the contract upon which such forfeiture was to be declared. (*King v. Seebeck*, 20 Ida. 223, 118 Pac. 292.)

The judgment in this case must be reversed as to the respondent Young and the cause will be remanded, with direction to the trial court to grant a new trial as between the appellants and respondent Young and to take such further proceedings as may be necessary to ascertain the amount due from Young to appellants.

Judgment affirmed as between respondent Harris and appellants, and reversed as between respondent Young and appellants. Costs incurred by respondent Harris on this appeal awarded against appellants and costs incurred by appellants on this appeal awarded against respondent Young.

Stewart, C. J., and Sullivan, J., concur.