767 P.2d 276

**Robert SECCOMBE and Ruth Seccombe, husband and wife, Plaintiffs–Respondents,**

v.

**Kenneth L. WEEKS and Sheren S. Weeks, husband and wife, Defendants–Appellants.**

No. 17022.

Court of Appeals of Idaho.

Jan. 4, 1989.

Russell J. Gallagher, Coeur d'Alene, for defendants-appellants.

W. Corey Cartwright of Sims, Liesche & Newell, P.A., Coeur d'Alene, for plaintiffs-respondents.

SWANSTROM, Judge.

This dispute between adjoining landowners is over a roadway easement claimed by one of them across the land of the other. Kenneth and Sheren Weeks appeal from the district court's judgment declaring a road easement across their property in favor of Robert and Ruth Seccombe. The Weeks (we will use this name as though it were plural) contend the court erred in holding that an easement "in view" existed, having been reserved by conveyances referring to such an easement. The Weeks also contend the district court erred in concluding, alternatively, that an easement exists by implication through pre-existing use. We affirm the judgment. The case is remanded to the district court only for the entry of a final decree precisely describing the easement.

Preliminarily, we address a procedural issue raised by the Seccombes. A special master was appointed to receive the evidence in this non-jury action. The master made findings of fact and conclusions of law, determining that the Seccombes had proven an easement by reservation or, alternatively, an easement by implication through pre-existing use. No objection was made to the master's report. Subsequently, the district court adopted in full the master's report, and entered judgment accordingly. The Seccombes now contend that the Weeks' failure to object to the master's report when submitted bars any

subsequent challenge to its findings and conclusions. We disagree.

The purpose of a master is to assist the district court in obtaining facts where complicated issues or exceptional conditions require it. I.R.C.P. 53(b). The appointment of a master does not displace the district court's role as the ultimate trier of fact. Under I.R.C.P. 53(e)(2), the district court is mandated to accept the master's findings of fact unless clearly erroneous; consequently, the trial court must independently review the evidence to determine whether the findings were supported by substantial evidence. The master's conclusions of law, however, carry no weight with the trial court. Therefore, Rule 53(e)(2) permits the court to adopt the master's report, modify it, supplement it with further evidence, recommit it to the master with instructions, or reject it in whole or in part.

■ Because the trial court is the final arbiter of all the issues, the master's report does not stand automatically approved in the absence of an objection. Thus, objections to findings and conclusions of the master are not required to preserve an issue for appeal. *See* 9 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2612 at 805–06 (1971). *Compare Gemkist Farms, Inc. v. Bolen,* 102 Idaho 906, 643 P.2d 1076 (Ct.App.1982) (objection to *appointment* of master deemed waived if not timely made). *See also Owen v. Boydstun,* 102 Idaho 31, 624 P.2d 413 (1981) (neither an objection to findings nor a request or motion for findings is a prerequisite to appellate review, and such failure to bring the matter to the attention of the trial court does not waive the right to bring it up on appeal). Of course, parties are encouraged to make timely and specific objections to the master's report, thus drawing the court's attention to findings that are clearly erroneous or to errors of law. In the absence of such objections a court is likely to adopt in full the master's report, leaving appellants in the uncomfortable position of explaining to an appellate court why an objection was not earlier presented. Nevertheless, we hold that the Weeks are not barred on

appeal from challenging the master's findings as adopted by the district court where no objection to the master's report was made before the court acted.

■ We now set forth our standard of review in this case. The findings of a master, to the extent that they are adopted by the district court in a non-jury action, are the findings of the court. 9 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2615 at 814 (1971). Findings of fact will not be disturbed on appeal unless they are clearly erroneous. I.R.C.P. 52(a). Accordingly, our standard for reviewing a trial court's findings and conclusions is to determine whether they are supported by substantial evidence, and to determine whether the trial court properly applied the law to the facts as found. *See Rasmussen v. Martin,* 104 Idaho 401, 659 P.2d 155 (Ct.App.1983). Because we believe the evidence supports the finding of an easement by reservation, we need only address that issue.

The record presents the following facts. Loval and Jean Hall are the common grantors of the adjoining parcels now separately owned by the Seccombes and the Weeks. The Halls purchased this steep, forested land in 1957. The land is abutted at its southern boundary by Marie Creek Road, a forest service road. To provide vehicle access to the higher part of their land, the Halls in 1973 pioneered a rather circuitous road from Marie Creek Road to the northern area of what is now the Seccombe parcel, eventually intersecting a logging road built in the early 1940's. The Halls' road begins in what is now the Seccombe parcel and courses northeasterly across the Seccombe parcel until it enters what is now the Weeks parcel. There the road turns in a more northerly direction traversing part of the Weeks parcel before making a switchback in a northwesterly direction and reentering the Seccombe parcel. The Halls continuously used this road for logging between 1973 and 1976.

The chain of title is reflected in the following transactions. The Halls sold what is now the Weeks parcel on June 11, 1976, to Dorian and Mary Johnson. The deed to the Johnsons contained an *exception* for

easements "in view and or record [sic]." The deed was recorded on June 14, 1976. Also on June 11, the Halls and the Johnson's signed and had notarized a separate instrument *reserving* to the Halls "a right of access on the existing road to [the Johnsons'] property for the owner, or owners of the adjoining property." This instrument was recorded on August 16, 1976. At trial the master ruled that this instrument was not properly acknowledged and consequently it could not give constructive notice of the purported reservation. No issue has been raised on appeal as to this ruling.

On August 23, 1976, the Seccombes purchased their parcel directly from the Halls. The deed to the Seccombes contained a grant of "an easement for access on an existing road as contained in [the deed to the Johnsons and the instrument reserving an easement]." The deed to the Seccombes was not recorded. However, a memorandum of the sale agreement was recorded on January 30, 1981. While viewing the property as prospective buyers, the Seccombes traveled the road across the Johnson property on two separate occasions without experiencing objections or interference from any person. After their purchase, the Seccombes continued to use the road across the property owned by the Johnsons.

The Johnsons conveyed their property (the Weeks parcel) by warranty deed to Daniel and Myrhna Black on April 28, 1978. The deed contained an *exception* for easements "in view and of record." The Blacks did not record their deed until August 22, 1980. During their ownership of the property, the Blacks attempted to interfere with the Seccombes' use of the road. The Halls and the Seccombes filed an action against the Blacks to confirm their right to use of the easement. A notice of lis pendens, declaring an interest in the road on the Blacks' property, was recorded on February 28, 1980. Eventually, an agreement was reached by the Halls, the Seccombes, and the Blacks in which the Blacks recognized an easement in the road on their parcel in favor of the Seccombes. This agreement was executed on August 22, 1980, and was recorded on September 3. The pending action against the Blacks was then dismissed.

On August 13, 1980, the Blacks deeded their property to the Weeks. The deed transferred the property "SUBJECT to ... easements of view and/or of record." The deed was recorded on August 22, 1980. Prior to their purchase, the Weeks received a title insurance report from their realtor. The report specifically noted and excepted from title insurance coverage, among other things, the instrument signed by the Halls and the Johnsons purporting to reserve an easement for the Halls and the notice of lis pendens recorded as a result of the then pending action against the Blacks concerning the easement. The Weeks denied having knowledge of this report prior to closing their purchase, but the master chose to believe that they had received it.

Between 1980 and 1983 the Seccombes periodically used the road across the Weeks parcel without encountering any objection or interference. In 1983 the Seccombes decided to sell their land. When several prospective buyers used the road to view the land, the Weeks became upset with the intrusions and told the Seccombes' realtor that no one would be allowed to further use the road. The Seccombes then filed this action against the Weeks.

An easement may be created by way of exception or by reservation. Technically, an exception is the withholding of title to a portion of the property conveyed by the grantor; a reservation creates some new right in favor of the grantor in the conveyed property, conceptually thought of as an express grant of the easement by the grantee. *See* 2 G. THOMPSON, COMMENTARIES ON THE MODERN LAW OF REAL PROPERTY §§ 332, 334 (J. Grimes 1980 replacement). No particular forms or words of art are necessary; it is necessary only that the parties make clear their intention to establish a servitude. Regardless of the terms used, courts generally will attempt to ascertain the intention of the parties by referring not only to the language of the deed, but also to the circumstances attending the transaction and the condition of the property. *Id.*

■ Here, as we have noted, the Halls deeded part of their land to the Johnsons, specifically *excepting* easements "in view."

All deeds in the chain of title to the Weeks contain similar language. Although the language in the deeds is ambiguous on its face,[1] the evidence amply reveals an intent to create a servitude. While the instrument signed by the Halls and the Johnsons —purportedly reserving an easement to the Halls—may not satisfy the acknowledgement requirement for giving constructive notice under Idaho's recording statutes, *see, e.g., Harris v. Reed*, 21 Idaho 364, 121 P. 780 (1912), we hold that the instrument is reliable evidence of intent to create a servitude. The condition of the property at the time the Johnsons purchased it substantiates the finding of an easement "in view" because the Halls used the existing roadway across the Johnson parcel as the only access to the northern part of the adjoining parcel, which use had been apparent prior to the Johnsons' purchase and the use continued afterward.

Further, we find substantial evidence showing that the road across the parcel later purchased by the Weeks not only was "in view" at the time the Johnsons acquired the land, but was also "in view" at the time the Weeks purchased the property. Perhaps the most telling evidence is the Weeks' testimony concerning whether the road was "in view." While they aver that the road was not "in view," the Weeks concede that the Seccombes and the prospective purchasers of the Seccombe parcel used the road. The argument that a road in use is not visible is incredible. Moreover, the language of the deeds in the chain of title, the notice of lis pendens, and the information contained in the title report should have at least put the Weeks on inquiry notice that a servitude either was present or was being sought on the parcel they were purchasing. We conclude that an easement is present, whether by reservation or by exception.

■ We note a deficiency in the district court's final decree setting out the right to an easement in favor of the Seccombes. The Weeks filed an objection to the court's judgment, complaining that it granted an easement not specifically described by the master. The objection was dismissed, but we believe the case must be remanded for a precise description of the easement.

■ A judgment which affects an interest in real property must describe the interest with such specificity and certainty that the rights and liabilities of the parties are clearly fixed. *Palmer v. Fitzpatrick*, 97 Idaho 925, 557 P.2d 203 (1976); *Sinnett v. Werelus*, 83 Idaho 514, 365 P.2d 952 (1961). The judgment here sets forth only the legal description of the adjoining parcels and grants an easement for the Seccombe parcel as the dominant estate. There is not a precise description of the extent and duration of the easement. We direct the district court on remand to provide a description of the easement in conformance with the above principle. Additional evidence may be taken for this purpose.

The judgment is affirmed. Case remanded for a precise description of the easement. Costs to respondents, the Seccombes. No attorney fees on appeal.

WALTERS, C.J., and BURNETT, J., concur.

---

1. In preparing deeds with reservations or exceptions, we implore practitioners to clarify the language used by expressing simply the type and extent of the servitude sought and thus avoid doubt as to what the parties intended. The language in the deeds in this case does little more than tell us a servitude was intended.