861 P.2d 101

**Afton C. HIGLEY and Mary Louise Jacobsen, as personal representative of the Estate of Fred Jacobsen, Plaintiffs–Appellants–Cross Respondents,**

v.

**Van J. WOODARD and Margareta J. Woodward, husband and wife, Defendants–Respondents–Cross Appellants.**

No. 19275.

Court of Appeals of Idaho.

Sept. 29, 1993.

Adamson & Summerhays, Pocatello, for appellants. Dannis M. Adamson argued.

Loveless, Neilsen & Loveless, Pocatello, for respondents. Michael B. Neilsen argued.

WINMILL, Judge pro tem.

This is an appeal from a decision of the district court adopting the findings of fact and conclusions of law of a special master appointed to preside over an accounting requested by the plaintiffs [1] regarding the defendants' duty to pay rent under a written farm lease. For the reasons set forth below, we affirm.

The relevant facts may be summarized as follows. Dale T. and Helen B. Smedley (Smedley) acquired fee title, through a land exchange, to 736 acres of real property near Salmon, Idaho. Smedley did not intend to use the property for farming and ranching purposes but rather expected to develop it into a residential subdivision. However, in order to keep the property green and attractive to potential buyers, Smedley needed someone to farm and ranch the undeveloped portion of the property until his plan came to fruition. Thus, the defendants, Van J. and Margareta J.

---

1. Several parties were named as plaintiffs in this action when it was commenced but only the plaintiffs representing the estate of Fred Jacobsen prosecuted this appeal. As a result, this Court entered an order amending the caption by deleting the names of the other plaintiffs who have not appeared in the appeal. Consequently, our references in this opinion to "the plaintiffs" includes all parties originally named as such in the proceeding below, without limitation solely to the plaintiffs who pursued this appeal.

Woodward (Woodward) entered the picture. Smedley and Woodward entered into a initial written lease agreement in November of 1977. However, this agreement was later superseded by the parties executing a document entitled "Farm Lease on Shares." The lease, effective as of November 1, 1977, was for a term of thirty years and involved all the farmable land included in a 736 acre tract.

The lease provided that Woodward was to pay rent in the form of one-half of all the crops grown on the land after deducting: (1) immediate familial living expenses, (2) payment of farm operating expenses, and (3) payments on any farm operating loans. Smedley was obligated under the lease to pay all taxes, assessments, and water-right expenses that would be levied upon the leased premises. The lease provided that upon its termination Smedley would convey 20 acres of property to Woodward. As time passed, additional matters transpired that were not addressed or provided for in the lease. For example, Smedley conveyed approximately 35 acres of land to Woodward, rather than the 20 acres provided for in the lease. Woodward never paid any rent to Smedley, nor did Smedley ever ask for a formal accounting for any rent that might be due under the lease.

Smedley's development plans never materialized and he found himself in severe financial difficulties in 1984. Thereafter, the plaintiffs acquired the property from Smedley either through foreclosure proceedings or by voluntary transfer to satisfy debts which Smedley had incurred.[2] In one foreclosure action brought by the plaintiff Jacobsen, Smedley and Woodward were named as defendants. Although the action was primarily a foreclosure proceeding, Woodward was required to provide information, by way of interrogatories, regarding the net farm profit and rent paid according to the terms of the lease for the years 1977 through 1985. The district court's foreclosure order, entered December 15, 1987, specifically recognized Wood-

ward's right to remain in possession of the premises provided that he was current in his lease obligations.

Despite the change in ownership, Woodward remained in possession and continued to farm the property as a whole. In November of 1988, the plaintiffs demanded that Woodward account to them for all transactions that had occurred under each year of the lease. Woodward was in the process of complying with their demand when the present suit was filed in January of 1989. In their complaint, the plaintiffs again demanded an accounting of all the transactions that had taken place under the lease and added a demand for a judgment for any amounts determined to be owing them. Woodward counterclaimed for monies that he had expended for taxes and assessments on the property which were to be paid under the lease by the lessor.

The district court appointed, pursuant to I.R.C.P. 53(a), a special master to preside over the accounting action. The special master conducted a hearing wherein witnesses testified, documentary evidence was introduced and admitted, and briefs were filed and considered. The special master's report recommended that the district court deny the relief requested by the plaintiffs because their claim was partially barred by the applicable statute of limitation and was precluded by the doctrine of res judicata because of the accounting provided in the Jacobsen foreclosure. However, the master also concluded that if the statute of limitation and the doctrine of res judicata did not bar the plaintiffs' claims, Woodward nevertheless owed the plaintiffs nothing because he had adequately accounted for all income and expenses incurred in his operation under the lease on shares from its inception through 1989. The special master also recommended that Woodward's counterclaim be denied. No objections were lodged regarding the special master's findings of fact and conclusions of law as provided by I.R.C.P. 53(e)(2). After reviewing the record and evidence presented, the district court entered an order adopting the

---

**2.** The record indicates that Smedley, along with other parties not involved in this suit, also have a reversionary interest to a portion of the original 736 acre tract.

special master's finding of fact and conclusions of law. This appeal followed.

## Standard of Review

 Initially we note the standard of review for the district court's adoption of the findings of fact and the conclusions of law of the special master. The district court is required to adopt the special master's finding of fact unless they are clearly erroneous. I.R.C.P. 53(e)(2); *Rodriguez v. Oakley Valley Stone, Inc.*, 120 Idaho 370, 377, 816 P.2d 326, 333 (1991). In turn, the master's findings which the court adopts in a non-jury action are considered to be the findings of the court. I.R.C.P. 52(a); *Seccombe v. Weeks*, 115 Idaho 433, 435, 767 P.2d 276, 278 (Ct.App.1989) (*citing* 9 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2615 (1971)). Furthermore, the findings of the court will not be set aside on appeal unless clearly erroneous. I.R.C.P. 52(a). Consequently, our standard for reviewing the trial court's findings of fact is to determine whether they are supported by substantial, although conflicting, evidence. *Seccombe*, at 435, 767 P.2d at 278 (*citing Rasmussen v. Martin*, 104 Idaho 401, 404, 659 P.2d 155, 158 (Ct.App.1983)).

 In contrast, the master's conclusions of law are not binding upon the district court, although they are expected to be persuasive. *Rodriguez*, at 378, 816 P.2d at 334. This permits the district court to adopt the master's conclusions of law only to the extent they correctly state the law. *Id.; see* 5A JAMES W. MOORE et al., MOORE'S FEDERAL PRACTICE ¶ 53.-12[5] (2nd ed. 1980). It necessarily follows that, to the degree the district court adopts the master's conclusions of law, they are also the conclusions of the court. Accordingly, our standard of reviewing the trial court's conclusions of law is one of free review. *See Clark v. St. Paul Property & Liability Ins. Co.*, 102 Idaho 756, 757, 639 P.2d 454, 455 (1981).

## Issues on Appeal

The plaintiffs raise six issues on appeal. Although not stated with clarity, those issues appear to fall into three categories which can be summarized as follows: (1) whether the district court erred by adopting the special master's findings that the plaintiffs' action was partially barred by the applicable statute of limitation and by the doctrine of res judicata; (2) whether it was error for the district court to adopt the findings of the master that the plaintiffs were bound by the waivers to conditions and covenants of the lease by their predecessor-in-interest and whether it was error to adopt the master's finding that the lease was more facade than substance; and (3) whether the district court erred by failing to note that the master improperly concluded the trial for accounting and whether it was error to adopt the master's finding that Woodward had adequately accounted to the plaintiffs. We will consider each argument in turn.

## Statute of Limitation and Res Judicata

 The special master recommended that the relief requested by the plaintiffs be denied as to certain years, because their claim was partially barred by the applicable statute of limitation and by the doctrine of res judicata. However, the master went on to consider the merits of the plaintiffs' claims. The master concluded that even if the statute of limitation and the doctrine of res judicata did not bar the plaintiffs' claims, Woodward's accounting, which the master accepted, demonstrated that he owed the plaintiffs nothing under the terms of the farm lease. Where the judgment of the lower court is based upon alternative grounds, the fact that one of the grounds may have been in error is of no consequence and may be disregarded if the judgment can be sustained upon one of those other grounds. *Leydet v. City of Mountain Home*, 119 Idaho 1041, 812 P.2d 755 (Ct.App.1991) (*citing Fischer v. Fischer*, 92 Idaho 379, 382, 443 P.2d 463, 466 (1968)). *See Fox v. Board of County Commissioners*, 121 Idaho 684, 827 P.2d 697 (1992). Because we conclude, for the rea-

sons set forth below, that the master's acceptance of Woodward's accounting was supported by substantial evidence, we find it unnecessary to consider the plaintiffs' claim that the district court erred in adopting the master's recommendation that the plaintiffs' claims be dismissed under the statute of limitation and the doctrine of res judicata.

### The Master's Characterization of the Lease on Shares

■ The plaintiffs argue that the district court erred by adopting the master's findings that the lease was more facade than substance and that the plaintiffs, as successors to the original lessor, stood in no better or worse position than their predecessor-in-interest. The legal significance of these arguments is obscure at best. However, it appears to be the plaintiffs' argument that from these findings the master concluded that the plaintiffs were not entitled to the remedies generally afforded lessors for breach of a lease agreement. This was not the conclusion of the special master or the district court and we, accordingly, reject the plaintiffs' contention as being without merit.

The agreement between Smedley and Woodward was clearly not a typical farm lease on shares. The terms of the lease were exceptionally beneficial to Woodward. Moreover, in the course of performance, Smedley never requested a formal accounting, never suggested that some amount of rent was due, and granted the Woodwards even more benefits than were provided for under the liberal terms of the lease. It was on these facts that the special master accepted Smedley's and Woodward's characterization of the lease and concluded that the purpose of the lease was to keep the property green and attractive in anticipation of development.

With this background, the master characterized the lease on shares as more facade than substance. The master did not dispute that the legal relationship the agreement had created between Smedley and Woodward was that of landlord and tenant; the master was simply pointing out that

the parties' expectations and the terms of the agreement were not the same as would normally accompany a farm lease on shares. The master did not rely on this characterization as an excuse to not enforce the plaintiffs' rights under the lease. On the contrary, it was the master's decision to enforce the lease according to its unusual terms, rather than like a more typical farm lease on shares, which led to the decision that no monies were due to the plaintiffs.

The district court did not err in adopting the master's conclusion that the plaintiffs' position was no better or worse than that of Smedley's. The master's conclusion was another way of saying that the plaintiffs' acquisition of the property was subject to Woodward's rights as a lessee, so that the plaintiffs were bound by the terms of Woodward and Smedley's lease agreement. *See Isaacson v. First Security Bank of Utah,* 95 Idaho 452, 455, 511 P.2d 269, 272 (1973) (donee of reversionary interest was subject to the lessee's right of first refusal contained in the lease agreement with the donor); *Eldredge v. Jensen,* 89 Idaho 243, 247, 404 P.2d 624, 626 (1965) (generally transfer of reversionary interest by landlord neither terminates the lease nor deprives the tenant of any of his rights under the lease).

In light of the foregoing, we are hard pressed to find any colorable basis for the plaintiffs' contentions. As such, we hold that there was substantial evidence to support the master's findings as to the nature of the lease agreement and the plaintiffs' rights thereunder.

### The Master's Findings Regarding the Accounting

The plaintiffs contend that it was error for the district court to adopt the master's findings that Woodward had adequately accounted to the plaintiffs. The plaintiffs base this contention on two grounds. First, they claim that the trial for accounting was improperly concluded thereby preventing them from introducing additional evidence. Second, they contend that the master improperly relied upon Woodward's

accounting sheets in making his findings of fact, when the accounting sheets were admitted into evidence for illustrative purposes only and not as substantive evidence. We are not persuaded by either argument.

■ The accounting trial was held on September 20, 1990. When it was apparent that the hearing would not be completed, Woodward's counsel indicated that he had a scheduling conflict if the trial was going to continue on the next day. Both counsel indicated that they had little left to cover. The master announced that, if necessary, the hearing would be rescheduled for completion at a later date. However, the plaintiffs' counsel made no request to the master or to the district court to reopen the hearing for the purpose of introducing more evidence.[3] Where the plaintiffs had the opportunity to request another occasion to present further evidence, but chose not to do so, they cannot be heard to complain about the adequacy of the record. We find no error in the manner in which the hearing was conducted and ended.

■ The plaintiffs further contend that there was insufficient evidence for the master to conclude that Woodward had adequately accounted to the plaintiffs. This argument depends upon the plaintiffs' contention that the only evidence supporting the master's finding was an exhibit admitted solely for illustrative purposes. At the hearing, Woodward sought to introduce into evidence, as Exhibit A, his accounting statements for the years 1979 through 1988. The transcript is ambiguous as to whether Exhibit A was admitted without limitation or for illustrative purposes. However, the minute entry of the proceedings clearly indicates that the exhibit was admitted without any restriction. In addition, when the master adopted, as his findings, the accounting Woodward had furnished as Exhibit A, he did so without limitation. The record thus supports a conclusion that the accounting statements were introduced as direct evidence.

Regardless of whether Exhibit A was offered as direct evidence or was used to illustrate Woodward's testimony to the same effect, it provided substantial evidence supporting Woodward's contention that he owed the plaintiffs nothing under the unusual terms of the lease agreement. Simply because evidence was offered to illustrate oral testimony does not deprive it of all evidentiary value. Thus, we find no error in the master's consideration of Exhibit A.

■ Implicit within each of the plaintiffs' assignments of error is the broader, although unstated, contention that the master's finding that Woodward had adequately accounted to the plaintiffs was not supported by substantial evidence. As previously noted, in considering a master's findings that have been confirmed by the district court, we follow the rule that those findings will be overturned on appeal only if they are not supported by substantial evidence. *Seccombe,* at 435, 767 P.2d at 278; *Rodriguez,* at 377–78, 816 P.2d at 833–34. This places the burden on the plaintiffs to show that the district court erred in adopting the findings of the master and, in turn, this Court will view the evidence in a light most favorable to the respondent, Woodward. *See Troche v. Gier,* 118 Idaho 740, 741, 800 P.2d 136, 137 (Ct.App.1990). The master, in accepting the accounting set forth in Exhibit A, obviously found Woodward's testimony and evidence to be credible and determinative of the issues presented. Moreover, the plaintiffs have not pointed to any of the master's specific factual findings that were not supported by evidence in the record. The plaintiffs have done nothing more than ask this Court to review the facts anew, make our own determination of credibility, and substitute our opinion for that of the trial court and the special master. We decline the invitation. After a detailed review of the record we find that there is substantial evidence to support the district court's

---

**3.** Although not part of the record, counsel for Woodward brought to this Court's attention during oral argument that plaintiffs' counsel corresponded with the master and opposing counsel shortly after the September 20 hearing, advising them that he did not wish to present further evidence and would submit the case to the master as it stood at the close of the hearing.

adoption of the master's finding that Woodward had adequately accounted to the plaintiffs under the lease for the years 1979 through 1989.

## Attorney Fees

As a matter of course, Woodward, as the prevailing party, is entitled to costs on appeal. I.A.R. 40. In addition, Woodward also seeks an award of attorney fees pursuant to I.C. § 12–121 as the prevailing party on appeal. An award of attorney fees is appropriate under this section only when this Court determines, from the record as a whole, that the case was brought, pursued or defended frivolously, unreasonably or without foundation. I.R.C.P. 54(e)(1); *Minich v. Gem State Developers, Inc.*, 99 Idaho 911, 918, 591 P.2d 1078, 1085 (1979). On the other hand, where the losing party brings an appeal in good faith or in other words points to any findings that are clearly or even arguably unsupported by substantial evidence or raises a genuine issue of law, attorney fees are not available under I.C. § 12–121. *Edwards v. Edwards*, 122 Idaho 963, 970, 842 P.2d 299, 306 (Ct.App.1992).

The plaintiffs have not presented to this Court any significant issue on appeal regarding a question or law or any finding of fact that was made by the district court or the master that was clearly or even arguably not supported by substantial evidence. Nor have they requested that we establish any new legal standards or modify or clarify any existing ones. The plaintiffs have done nothing more than ask this Court to sit as the trier of fact. As a consequence, this Court is left with the abiding belief that this appeal was brought unreasonably and without foundation. Under these circumstances, Woodward is entitled to attorney fees on appeal in an amount to be determined under I.A.R. 41(d).

## Conclusion

The order of the district court adopting the findings of the special master and the judgment thereon entered are affirmed.

Costs and attorney fees on appeal to the respondents, Woodwards.

WALTERS, C.J., and SWANSTROM, J. pro tem., concur.